## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____

| | | |
|---|---|---|
| **NICOLE ESPOSITO,** | : | **CIVIL ACTION NO.** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BOARD OF REGENTS OF HIGHER** | : | |
| **EDUCATION; CONNECTICUT STATE** | : | |
| **COLLEGES AND UNIVERSITIES;** | : | |
| **ROBERT STEINMETZ, in his individual** | : | |
| **and official capacities;** | : | |
| **ALICE PRITCHARD, in her individual** | : | |
| **and official capacities; and** | : | |
| **ANDREW KRIPP, in his individual** | : | |
| **and official capacities.** | : | |
| **Defendants** | : | |
| _____: | | **AUGUST 27, 2021** |

## COMPLAINT

I.      **INTRODUCTION**

1.  The Connecticut State Colleges & Universities, and Defendants Robert Steinmetz, Alice

    Pritchard, and Andrew Kripp have discriminated against Plaintiff Nicole Esposito based

    on sex, and retaliated against Nicole Esposito for opposing discrimination and retaliation

    and speaking out on matters of public concern.  Connecticut State Colleges &

    Universities has also subjected other women to discrimination and retaliation, and denied

    women equal employment opportunities.  By discriminating and retaliating against

    Nicole Esposito, and by engaging in a pattern and practice of discriminating and

    retaliating against other women, while receiving federal funds to support its activities,

    Connecticut State Colleges and Universities has violated Title IX of the Education

    Amendment Act of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX").  Defendants Robert

Steinmetz, Alice Pritchard, and Andrew Kripp have also violated Nicole Esposito's rights under the First Amendment and the Fourteenth Amendment of the U.S. Constitution by subjecting her to sex discrimination and retaliation. Plaintiff is seeking monetary damages and prospective injunctive relief.

## II.  **PARTIES**

2.  Plaintiff, Nicole Esposito, is an individual residing in Massachusetts who is employed by the Connecticut State Colleges & Universities.  Plaintiff is a female.

3.  Defendant Board of Regents of Higher Education is the governing body for the regional community-technical college system, the Connecticut State University System and Charter Oak State College.  Conn. Gen. Stat. § 10a-1a *et seq.*

4.  Defendant Board of Regents of Higher Education governs and oversees the Connecticut State Colleges and Universities, and its System Office.  Defendant Board of Regents of Higher Education has the sole power to appoint and remove Campus CEO's for the colleges within the Connecticut State Colleges & Universities System.

5.  Defendant Connecticut State Colleges & Universities has its central offices located at 61 Woodland Avenue, Hartford, Connecticut.

6.  Throughout this Complaint, Defendant Board of Regents of Higher Education and Defendant Connecticut State Colleges & Universities are referred to collectively as "CSCU."

7.  Defendant CSCU is an educational program or activity receiving Federal financial assistance under 20 U.S.C. § 1681(a).

8.  In addition to the employees who work at the seventeen colleges and universities that comprise the CSCU system, Defendant CSCU employs individuals who work at the CSCU System Office.

9.  Manchester Community College ("MCC") is one of the colleges in the CSCU system.

10. Defendant Robert Steinmetz ("Steinmetz") is an individual residing in Connecticut. Steinmetz is employed by Defendant CSCU as Regional President for Region One/Capital-East.  At all times relevant to this complaint, Steinmetz has acted under color of state law and was personally involved in acts of discrimination and retaliation against Plaintiff.

11. Defendant Alice Pritchard ("Pritchard") is an individual residing in Connecticut. Pritchard is employed by Defendant CSCU as the Chief of Staff for the CSCU System and a member of the System Office leadership.  At all times relevant to this complaint, Pritchard has acted under color of state law and was personally involved in acts of discrimination and retaliation against Plaintiff.

12. Defendant Andrew Kripp ("Kripp") is an individual residing in Connecticut.  Kripp is employed by Defendant CSCU as Vice President of Human Resources.  At all times relevant to this complaint, Kripp has acted under color of state law and was personally involved in acts of discrimination and retaliation against Plaintiff.

## III.  <u>JURISDICTION</u>

13. This Court has jurisdiction over this action because Plaintiff's claims under Title IX and 42 U.S.C. § 1983 present federal questions under 28 U.S.C. § 1331.  This Court also has jurisdiction over this matter under 28 U.S.C. § 1332 because the parties are completely diverse and the amount in demand exceeds $75,000.00.

IV.     **BACKGROUND**

14. After a previous period of employment at Manchester Community College in which
    Plaintiff served as a member of the faculty and on various committees, on April 28, 2020,
    Defendant CSCU offered Plaintiff the position of Campus Chief Executive Officer
    ("CEO") for Manchester Community College, effective July 6, 2020.

15. As Campus CEO for MCC, Plaintiff reported to Steinmetz.

16. During the relevant time period, Steinmetz has reported to Pritchard.

17. Steinmetz began making sexist statements to Plaintiff very early during her tenure as
    Campus CEO.

18. For instance, Steinmetz repeatedly stated to Plaintiff that he did not like her "tone of
    voice" and that he did not like the way that Plaintiff spoke.  When Plaintiff asked
    Steinmetz for specifics, he was unable to offer any specific criticisms, but he stated
    further that Plaintiff was "off-putting."

19. Early in Plaintiff's tenure as Campus CEO, Steinmetz also made sexist comments about
    another professional woman.  When Plaintiff communicated an intention to hire an
    extremely qualified and highly educated woman for an important leadership position in
    her administration at MCC, Steinmetz objected and stated that he did not like her.

20. When Plaintiff asked Steinmetz to provide the basis for his opposition, he did not
    question her qualifications or her credentials.  Instead, Steinmetz responded with
    concerns regarding how much the female applicant talked during her interview.

21. Plaintiff informed Steinmetz that she was going to hire the female applicant despite his
    objection because Plaintiff felt strongly that she was the best candidate.

22. In July 2020, after Steinmetz repeatedly criticized Plaintiff's tone and characterized Plaintiff as off-putting based on her communication style and delivery, and after Steinmetz objected to Plaintiff's desire to hire another highly qualified female for a leadership position because he felt that she talked too much, Plaintiff expressed to Steinmetz directly that his comments were sexist.

23. Steinmetz responded directly by threatening Plaintiff's job security and stated, "you are only a week in and already acting like this.  We will see if you work out here."

24. Shortly thereafter in July 2020, Plaintiff communicated concerns to Pritchard about Steinmetz and his conduct, including Plaintiff's concerns that Steinmetz was treating her differently than other male campus CEOs, and that Steinmetz threatened Plaintiff's job after Plaintiff attempted to address these issues with him.

25. As part of Plaintiff's July 2020 communication to Pritchard, Plaintiff included details regarding the statements by Steinmetz criticizing her "tone" and calling her "off-putting," and Steinmetz's objection to the hiring of a brilliant and highly qualified female candidate for a reason that included his criticism of how much she talked during her interview.

26. As part of Plaintiff's July 2020 communication to Pritchard, Plaintiff stated:  "From the day I started I have sensed belittling when he speaks to me and he seems to consistently remind me that he is displeased with my 'tone' and my 'delivery.'  He explicitly told me 'It is not necessarily what you are saying, its just that your delivery is very off-putting.'  As a professional woman, I was very surprised to hear this."

27. As part of Plaintiff's July 2020 communication to Pritchard, Plaintiff explained that initially she wondered "Perhaps it's a cultural difference or male/female issue? I am not

sure, but at first I told him I respectfully disagree and I hope he understands that it is not my intent to be disrespectful.  I am just very direct."

28. As part of Plaintiff's July 2020 communication to Pritchard, Plaintiff explained that after additional examples of Steinmetz's sexism, including his further criticism of Plaintiff's "tone" and his criticism of the female applicant for how much she spoke during her interview, Plaintiff decided to speak up directly to Steinmetz and expressed to Pritchard that: "I will continue to remain professional and am happy to accept direction.  However, I am beginning to believe that is not what is happening here.  I am told that this is not happening to Steve Minkler or Duncan Harris [two other male campus CEOs who report directly to Steinmetz].  Given Robs comment about my role as the CEO of MCC might not work out, I am now deeply concerned that he threatened my job.  It is true that I spoke up for myself yesterday and I was clearly offended by his comments.  This was not well received by Rob."

29. In Plaintiff's July 2020 communication to Pritchard, Plaintiff expressed that she was providing information in advance of an expected opportunity to discuss the issues with Pritchard further by phone.

30. In response to Plaintiff's July 2020 complaint, which expressed concerns about sexism by Steinmetz against Plaintiff and another woman, and alleged disparate treatment by Steinmetz between Plaintiff and similarly situated men, Pritchard failed to address the serious concerns that Plaintiff raised.

31. In response to Plaintiff's complaint regarding sexism by Steinmetz, Pritchard did not conduct any investigation or notify the Office of Equal Employment Opportunity. Pritchard did not even speak with Plaintiff by phone regarding her complaint.

32. Instead, Pritchard sent Plaintiff an e-mail which essentially advised Plaintiff to go back and work things out with Steinmetz.

33. Pritchard, one of CSCU's senior leaders and Steinmetz's supervisor, responded to Plaintiff's complaint with deliberate indifference.

34. Following July 2020, and following CSCU's failure to investigate Plaintiff's complaints, Steinmetz continued to act in ways that belittled and demeaned Plaintiff, and he refused to acknowledge Plaintiff's positive job performance.

35. For instance, despite the challenges presented by the COVID-19 pandemic, MCC finished the year with a $2 million budget surplus and was recognized as the top community college in Connecticut.  Despite those accomplishments, and others, Steinmetz never acknowledged Plaintiff's positive performance nor provided Plaintiff with a performance evaluation.

36. In conversations with Plaintiff's colleagues over time, Plaintiff became aware that Steinmetz also treated other women who reported to him badly, and that he treated the men who reported to him more favorably.

37. After Plaintiff complained in July 2020 directly to Steinmetz and then to Pritchard, she became aware of additional examples when Steinmetz discriminated against other women, tolerated discriminatory acts by others, and retaliated against people who opposed discrimination.

38. As the end of Plaintiff's first year appointment as Campus CEO approached, Defendants attempted to carry out the threat to Plaintiff's job that Steinmetz made back in July 2020 when Steinmetz indicated in response to Plaintiff's opposition to his sexist remarks that she would not last here.

39. On Wednesday, June 16, 2021, Steinmetz sent Plaintiff an e-mail, copied to CSCU General Counsel Ernestine Weaver, mandating that Plaintiff appear for a meeting the following afternoon at 4:00 p.m.

40. Plaintiff asked questions about the meeting so that she could be prepared, which Steinmetz disregarded.

41. The following morning, June 17, 2021, Attorney Weaver informed Plaintiff that she did not need to prepare for the meeting because Plaintiff would not be required to speak during the meeting, but would only be required to listen as Steinmetz and Attorney Weaver presented Plaintiff with information.

42. In advance of the meeting with Steinmetz and Attorney Weaver on June 17, 2021, Plaintiff communicated concerns to Diane Mazza in Human Resources, and also to David Levinson, Interim President of the Connecticut Community College.

43. In these communications, Plaintiff expressed concern about the meeting to which Steinmetz had summoned her and once again reiterated concerns that Steinmetz had a pattern of discriminating against women and provided examples of other women who had also raised concerns regarding Steinmetz's conduct.

44. When Plaintiff conveyed her concerns to Levinson on June 17, Levinson agreed that Steinmetz should not be treating women that way and confirmed that Plaintiff was not the first person who expressed concerns to him about Steinmetz's treatment of women, but Levinson deflected responsibility.  As Levinson expressed it to Plaintiff, because Steinmetz reported to Pritchard, there was not much that he could do.

45. Later in the afternoon on June 17th, Steinmetz and Weaver met with Plaintiff and notified her that Steinmetz would be moving to non-continue her appointment as CEO of MCC, but failed to explain why Steinmetz and CSCU were taking that action.

46. During the meeting on June 17th, Plaintiff repeatedly asked Steinmetz and Attorney Weaver to explain the basis for the decision, but neither Weaver nor Steinmetz offered any justification or rationale.

47. At no time during the June 17th meeting did Weaver or Steinmetz allege that the decision to not renew Plaintiff's appointment was based on any deficiencies in Plaintiff's performance.  In fact, neither Steinmetz nor Weaver identified any deficiencies in Plaintiff's performance during that meeting.

48. Instead, Weaver and Steinmetz attempted to pressure Plaintiff into resigning from her position as Campus CEO of MCC and signing a stipulated agreement proposed by CSCU that included a general release and waiver of claims, and an agreement to refrain from making any public or private disparaging remarks.  The proposed agreement presented to Plaintiff on June 17th identified Pritchard as the signatory on behalf of CSCU.

49. During the June 17th meeting, Weaver implied that if Plaintiff did not agree to resign from her position and sign the agreement offered by CSCU that things would become public and that would not be good for Plaintiff.

50. During the June 17th meeting, Weaver indicated to Plaintiff that the CSCU Board of Regents was already on board with the decision to not renew her appointment.

51. Weaver told Plaintiff that the Board of Regents was already on board with the decision to not renew her appointment in order to pressure Plaintiff into resigning from her position as Campus CEO, and accepting the proposed stipulated agreement that included a waiver

of Plaintiff's rights to bring claims against CSCU, and a promise to not make public or private disparaging remarks.

52. During the June 17th meeting, Weaver indicated that Plaintiff needed to provide an answer as to whether Plaintiff would be accepting the proposed stipulated agreement by 3:00 p.m. on June 23, 2021 because, according to Weaver, the Board of Regents would be meeting and voting on the non-continuation of Plaintiff's employment at their public meeting on June 24, 2021 if Plaintiff did not resign from her position and accept the stipulated agreement by that time.

53. Pritchard and Kripp were also involved in the decision to attempt to remove Plaintiff from her position in June 2021.

54. On June 23, 2021, Plaintiff's legal counsel sent a letter to Weaver on Plaintiff's behalf opposing discrimination and retaliation against Plaintiff, as well as a pattern and practice of discrimination against others, and demanded that CSCU refrain from taking any further adverse actions against Plaintiff.  The June 23, 2021 letter is incorporated herein by reference.

55. In response to the June 23, 2021 letter from Plaintiff's legal counsel, Weaver sent a letter to Plaintiff's legal counsel on June 23, 2021, which confirmed that the Board of Regents would not be taking action regarding the non-continuation of Plaintiff's employment the following day, but Weaver's letter disputed the actions taken by Weaver during the June 17th meeting.

56. Following June 24, 2021, Defendants subjected Plaintiff to additional acts of discrimination and retaliation.

57. After June 24, 2021, CSCU communicated to Plaintiff, through her legal counsel, that it had retained a law firm to conduct a full and complete investigation into Plaintiff's allegations of discrimination and retaliation.  It was represented to Plaintiff, through her legal counsel, that the law firm would be independent.

58. In July 2021, Plaintiff and her legal counsel met with the law firm hired by CSCU and provided that law firm with details and documents regarding discrimination and retaliation against Plaintiff, as well as numerous examples demonstrating a pattern and practice of discrimination and retaliation at CSCU against other women.

59. On August 18, 2021, Kripp presented Plaintiff with another proposed stipulated agreement by CSCU which included terms requiring Plaintiff to resign from her position as Campus CEO of MCC, release and waive all claims, and promise to not make disparaging comments.

60. Kripp further notified Plaintiff that, if she did not accept the proposed agreement by 12:00 noon on August 24, 2021, the Board of Regents would be convened to consider the non-renewal of Plaintiff's appointment.

61. On August 18, 2021, Plaintiff learned for the first time that the law firm hired by CSCU to conduct the investigation was not actually independent.  Plaintiff learned on that date that CSCU hired a law firm that represents and advises CSCU on labor and employment matters and that works closely with Kripp on union negotiations to "investigate" her allegations of discrimination and retaliation.  Plaintiff also learned that the law firm hired by CSCU prepared a report which contained numerous deficiencies and failed to consider or address significant information that Plaintiff and her legal counsel provided to the law

firm relating to discrimination and retaliation against Plaintiff, as well as relating to discrimination and retaliation against other women at CSCU.

62. At approximately 12:00 noon on August 24, 2021, Plaintiff notified Kripp that her lawyers would be communicating with the Office of the Attorney General for the State of Connecticut later that day regarding this matter.

63. Shortly after 12:00 noon on August 24, 2021, after Plaintiff failed to sign the stipulated agreement before the deadline communicated by Kripp, Kripp called Plaintiff and informed Plaintiff that, effective immediately, he was placing her on leave, that she was no longer acting in the capacity as the CEO of Manchester Community College, and that she was prohibited from communicating with any member of the CSCU community, including employees, faculty, staff, and students.  Kripp also directed Plaintiff to remove her belongings from campus.

64. On August 24, 2021, Defendants also discontinued Plaintiff's access to her e-mail and CSCU information technology systems.

65. On August 24, 2021, Kripp suspended Plaintiff, effective immediately, without cause and in violation of CSCU policies and procedures.

66. Steinmetz and Pritchard were involved in the decision to suspend Plaintiff on August 24, 2021.

67. Other than the fact that Plaintiff failed to sign the stipulated agreement by the deadline imposed by Kripp on August 24, 2021, Defendants provided no explanation to Plaintiff in support of the actions taken against her.

68. On August 24, 2021, Plaintiff's legal counsel sent correspondence to the Office of the Attorney General of the State of Connecticut objecting to the most recent act of

discrimination and retaliation committed by Defendants against Plaintiff on that date, demanded that Plaintiff be immediately reinstated to her position as Campus CEO, and also provided significant details regarding the deficiencies and failures in the report provided by CSCU's law firm.

69. After Kripp suspended Plaintiff on August 24, 2021, Steinmetz assumed Plaintiff's responsibilities.

70. On the morning of August 25, 2021, Steinmetz personally notified the members of Plaintiff's cabinet at MCC that Plaintiff was on administrative leave and that he would be assuming Plaintiff's responsibilities.

71. Later on August 25, 2021, Terrence Cheng, President of CSCU, sent a message to the entire MCC community stating that Plaintiff "is out of the office at this time," and that Steinmetz would be assuming Plaintiff's responsibilities at MCC.

72. Based on the foregoing, CSCU subjected Plaintiff to sex discrimination in violation of Title IX, and Defendants Steinmetz, Pritchard, and Kripp discriminated against Plaintiff based on sex in violation of the Fourteenth Amendment.

73. Based on the foregoing, Plaintiff engaged in protected activity under Title IX, the Fourteenth Amendment, and the First Amendment, when she complained about and provided information relating to sex discrimination and retaliation against herself, and against other women at CSCU, and when Plaintiff complained about and provided information relating to CSCU's failure to properly investigate, respond to, and prevent, sex discrimination and retaliation against herself and other women at CSCU.

74. Defendant CSCU acted with deliberate indifference to Plaintiff's rights under Title IX.

75. Defendants Steinmetz, Pritchard, and Kripp acted with reckless indifference to Plaintiff's federally protected rights.

76. CSCU has also engaged in a pattern and practice of discrimination and retaliation against other women, and against others who have opposed discrimination, including, but not limited to, the following:

    a.   In January 2021, Steinmetz and another official in the CSCU System Office called an interim Campus CEO and directed the interim Campus CEO to not hire, for a discriminatory reason related to sex, the superior female candidate that the Campus CEO wanted to hire for a Financial Aid Director position, and directed the Campus CEO to issue a false and pretextual explanation for the decision.

    b.   Steinmetz discriminated against a former female interim Campus CEO by treating her differently and more negatively than he treated male Campus CEOs, and treating her differently and more negatively than other applicants when she applied for the Campus CEO position on a permanent basis.

    c.   Steinmetz has threatened the employment of other women who have stood up to him and stated that, if people cross him, he gets rid of them.

    d.   Steinmetz demonstrated a tolerance for discrimination against women and others when, during a presentation regarding workplace civility at a Connecticut community college in 2019, Steinmetz watched and listened and did nothing while the male presenter repeatedly made offensive racist and sexist comments which caused other employees to become visibly upset.  Steinmetz allowed the offensive presentation to last for more than an hour; it did not conclude until

another administrator intervened and stopped the presentation.  After people complained, Steinmetz was later forced to apologize for his failure to act.

e. An EEO (Equal Employment Opportunity) investigation at CSCU made findings against a male financial aid contractor at a Connecticut community college. When the female interim Campus CEO attempted to terminate the male financial aid contractor, Steinmetz favored continuing to retain the man despite his negative treatment towards women which the EEO investigation confirmed.

f. Steinmetz engaged in retaliatory actions against the woman who filed the EEO complaint which resulted in the EEO findings against that male financial aid contractor, including by altering her job duties, attempting to prohibit her from campus, and subjecting her to a baseless and pretextual investigation.

g. Steinmetz favored re-hiring another male at a Connecticut community college who was previously the subject of complaints to Human Resources by women and reportedly reprimanded and required to complete training.  Instead of completing the additional training, the male resigned his employment.  Subsequently, and with full knowledge of those facts, Steinmetz supported a proposal to bring that male back to work at CSCU even though he never completed the required trainings and despite the findings by Human Resources against him.

h. On August 25, 2021, shortly after Defendants suspended Plaintiff and Steinmetz assumed Plaintiff's responsibilities, Steinmetz revoked an offer of employment that Plaintiff had extended to an African-American female for a position at MCC.

i. Earlier in 2021, a group of women complained directly to the Board of Regents regarding sexism by Kripp.

77. Other women in addition to Plaintiff have complained about sexism and/or retaliation at CSCU, but CSCU has failed to take appropriate action.

**COUNT ONE:**       **SEX DISCRIMINATION IN VIOLATION OF TITLE IX**

78. Based on the foregoing, Defendant CSCU discriminated against Plaintiff because of sex in violation of Title IX, 20 U.S.C. § 1681 *et seq.*

79. Defendant CSCU is an educational program or activity receiving Federal financial assistance within the meaning of Title IX.

80. Defendant CSCU acted with deliberate indifference to Plaintiff's protected rights in violation of Title IX.

81. Defendant CSCU subjected Plaintiff to numerous discriminatory acts in violation of Title IX, including, but not limited to, repeatedly attempting to remove her from her position as Campus CEO without cause, suspending Plaintiff from her position as Campus CEO without cause, and sending harmful communications to others regarding Plaintiff's absence from the office.

82. Defendant CSCU's actions caused Plaintiff to suffer economic and non-economic damages.

83. Plaintiff has incurred, and will continue to incur, attorney's fees and costs in pursuing this action.

**COUNT TWO:**       **RETALIATION IN VIOLATION OF TITLE IX**

84.  Based on the foregoing, Defendant CSCU retaliated against Plaintiff in violation of Title IX, 20 U.S.C. § 1681 *et seq*.

85. Defendant CSCU is an educational program or activity receiving Federal financial assistance within the meaning of Title IX.

86. Defendant CSCU acted with deliberate indifference to Plaintiff's protected rights in violation of Title IX.

87. Plaintiff engaged in protected activity in July 2020 when she complained to Steinmetz regarding his discriminatory comments and when she rejected Steinmetz's opposition to hiring a supremely qualified female candidate and hired her despite Steinmetz's objection; in July 2020 when she complained to Pritchard regarding discrimination by Steinmetz; in June 2021 when she opposed sex discrimination and retaliation by CSCU and Steinmetz against herself and other women and complained about CSCU's institutional failure to properly respond to complaints of sexism by Steinmetz; in July 2021 when she provided additional information regarding discrimination and retaliation against herself and other women; in August 2021 when she engaged in further opposition to acts of discrimination and retaliation by CSCU.

88. Defendant CSCU had knowledge of Plaintiff's protected activity.

89. Defendant CSCU subjected Plaintiff to numerous adverse actions because of her protected activity, including, but not limited to, repeatedly attempting to remove her from her position as Campus CEO without cause, suspending Plaintiff from her position as Campus CEO without cause, and sending harmful communications to others regarding Plaintiff's absence from the office.

90. There is a causal connection between Plaintiff's protected activity and Defendant CSCU's retaliatory adverse action against her.

91. Defendant CSCU's actions caused Plaintiff to suffer economic and non-economic damages.

92. Plaintiff has incurred, and will continue to incur, attorney's fees and costs in pursuing this action.

**COUNT THREE:     DISCRIMINATION IN VIOLATION OF FOURTEENTH AMENDMENT**

93. Based on the foregoing, Defendants Steinmetz, Pritchard, and Kripp discriminated against Plaintiff because of her sex in violation of the Equal Protection Clause of the Fourteenth Amendment, as enforced through 42 U.S.C. § 1983.

94. Defendants Steinmetz, Pritchard, and Kripp subjected Plaintiff to numerous discriminatory acts, including, but not limited to, repeatedly attempting to remove her from her position as Campus CEO without cause, and suspending Plaintiff from her position as Campus CEO without cause. Steinmetz also personally published harmful communications to others regarding Plaintiff's absence from the office; a communication which was almost certainly discussed with Pritchard and Kripp in advance of its publication

95. Defendants' actions caused Plaintiff to suffer economic and non-economic damages.

96. Defendants acted with reckless indifference to Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

97. Plaintiff has incurred, and will continue to incur, attorney's fees and costs in pursuing this action.

**COUNT FOUR:     RETALIATION IN VIOLATION OF FOURTEENTH AMENDMENT**

98. Based on the foregoing, Defendants Steinmetz, Pritchard, and Kripp retaliated against Plaintiff in violation of the Equal Protection Clause of the Fourteenth Amendment, as enforced through 42 U.S.C. § 1983.

99. Plaintiff engaged in protected activity in July 2020 when she complained to Steinmetz regarding his discriminatory comments and when she rejected Steinmetz's opposition to hiring a supremely qualified female candidate and hired her despite Steinmetz's objection; in July 2020 when she complained to Pritchard regarding discrimination by Steinmetz; in June 2021 when she opposed sex discrimination and retaliation by CSCU and Steinmetz against herself and other women and complained about CSCU's institutional failure to properly respond to complaints of sexism by Steinmetz; in July 2021 when she provided additional information regarding discrimination and retaliation against herself and other women; in August 2021 when she engaged in further opposition to acts of discrimination and retaliation by CSCU.

100.    Defendants Steinmetz, Pritchard, and Kripp had knowledge of Plaintiff's protected activity.

101.    Defendants Steinmetz, Pritchard, and Kripp subjected Plaintiff to numerous adverse actions because of her protected activity, including, but not limited to, repeatedly attempting to remove her from her position as Campus CEO without cause, and suspending Plaintiff from her position as Campus CEO without cause.  Steinmetz also personally published harmful communications to others regarding Plaintiff's absence from the office; a communication which was almost certainly discussed with Pritchard and Kripp in advance of its publication.

102.    There is a causal connection between Plaintiff's protected activity and Defendants' retaliatory adverse action against her.

103.    Defendants' actions caused Plaintiff to suffer economic and non-economic damages.

104.     Defendants acted with reckless disregard for Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

105.     Plaintiff has incurred, and will continue to incur, attorney's fees and costs in pursuing this action.

**COUNT FIVE:          RETALIATION IN VIOLATION OF FIRST AMENDMENT**

106.      Based on the foregoing, Defendants Steinmetz, Pritchard, and Kripp retaliated against Plaintiff in violation of the Fourteenth and First Amendments, as enforced through 42 U.S.C. § 1983.

107.     Plaintiff engaged in speech as a citizen regarding matters of public concern.

108.     Plaintiff engaged in protected activity in July 2020 when she complained to Steinmetz regarding his discriminatory comments and when she rejected Steinmetz's opposition to hiring a supremely qualified female candidate and hired her despite Steinmetz's objection; in July 2020 when she complained to Pritchard regarding discrimination by Steinmetz; in June 2021 when she opposed sex discrimination and retaliation by CSCU and Steinmetz against herself and other women and complained about CSCU's institutional failure to properly respond to complaints of sexism by Steinmetz; in July 2021 when she provided additional information regarding discrimination and retaliation against herself and other women; in August 2021 when she engaged in further opposition to acts of discrimination and retaliation by CSCU.

109.     Plaintiff has not only complained about discrimination and retaliation against herself.  Rather, Plaintiff has complained about a pattern and practice of discrimination and retaliation against other women at CSCU in addition to herself, and also complained

about CSCU's failure to prohibit discrimination and retaliation, and its failure to protect women from discrimination and retaliation.

110.     A pattern and practice of discrimination and retaliation by senior public officials at a large state agency responsible for overseeing 17 colleges and universities in Connecticut, and that agency's systemic failure to protect women from discrimination and retaliation, is a matter of significant public concern.

111.     Defendants Steinmetz, Pritchard, and Kripp had knowledge of Plaintiff's protected activity.

112.     Defendants Steinmetz, Pritchard, and Kripp subjected Plaintiff to numerous adverse actions because of her protected activity, including, but not limited to, repeatedly attempting to remove her from her position as Campus CEO without cause, and suspending Plaintiff from her position as Campus CEO without cause.  Steinmetz also personally published harmful communications to others regarding Plaintiff's absence from the office; a communication which was almost certainly discussed with Pritchard and Kripp in advance of its publication.

113.     There is a causal connection between Plaintiff's protected activity and Defendants' retaliatory adverse action against her.

114.     Defendants' actions caused Plaintiff to suffer economic and non-economic damages.

115.     Defendants acted with reckless disregard for Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

116.     Plaintiff has incurred, and will continue to incur, attorney's fees and costs in pursuing this action.

**DEMAND FOR RELIEF**

Plaintiff hereby demands Judgment against Defendants, a Trial by Jury, and other relief,

including, but not limited to the following:

      1.    Compensatory and economic damages, including, but not limited to, emotional distress, harm to reputation, and loss of enjoyment of life's activities.

      2.    Attorney's fees and costs.

      3.    Statutory and common law punitive damages.

      4.    Interest.

      5.    Equitable Relief, and Prospective Injunctive Relief, including, but not limited to, an Order requiring that: (a) Defendants immediately reinstate Plaintiff to her position as Campus CEO and issue a corrective publication to the entire MCC community; (b) prohibiting Defendants from any further acts of discrimination or retaliation against Plaintiff; (c) Defendant CSCU adopt new and more effective measures intended to protect all women in the CSCU community from discrimination and retaliation, and ensure real accountability for supervisors and employees who violate rules prohibiting discrimination and retaliation; and (d) appointing an independent monitor to ensure Defendants' compliance with the Court's Order.

      6.    Other relief that in law or equity may pertain.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

PLAINTIFF,
NICOLE ESPOSITO

By:_____/s/Todd Steigman_____
Todd Steigman (ct26875)
William G. Madsen (ct09853)
Jacques J. Parenteau (ct09771)
Madsen, Prestley & Parenteau, LLC
402 Asylum Street
Hartford, CT 06103
Tel: (860) 246-2466
Fax: (860) 246-1794
tsteigman@mppjustice.com
wmadsen@mppjustice.com
jparenteau@mppjustice.com