## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NICOLE ESPOSITO | : | CIVIL NO. 3:21CV01149(SRU) |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| BOARD OF REGENTS OF HIGHER | : | |
| EDUCATION; CONNECTICUT STATE | : | |
| COLLEGES AND UNIVERSITIES; | : | |
| ROBERT STEINMETZ, in his individual | : | |
| and official capacities; | : | |
| ALICE PRITCHARD, in her individual | : | |
| and official capacities; and | : | |
| ANDREW KRIPP, in his individual | : | |
| and official capacities. | : | |
| *Defendants* | : | October 5, 2021 |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

### I.    INTRODUCTION

The plaintiff, Nicole Esposito, has brought this action by way of a Complaint, dated August 27, 2021, against the Board of Regents of Higher Education ("BOR"), Connecticut State Colleges and Universities ("CSCU"), and three individuals in their official and individual capacities, Robert Steinmetz, Alice Pritchard, and Andrew Kripp.  (Doc. #1, Complaint).  The plaintiff asserts claims arising out of her employment as Chief Executive Officer ("CEO") of Manchester Community College ("MCC").  Complaint ¶¶ 14, 15.  Pursuant to the Federal Rules of Civil Procedure 12(b)(6), the defendants move to dismiss Counts One and Two of the plaintiff's Complaint, in which the plaintiff asserts claims of discrimination and retaliation brought under Title IX.

### II.    RELEVANT ALLEGED FACTS

The plaintiff sets forth the following allegations.  The plaintiff was hired as CEO for MCC, effective on July 6, 2020.  Complaint ¶ 14.  Steinmetz, the plaintiff's supervisor, allegedly made sexist comments to her during her tenure as CEO, including a circumstance where the plaintiff

intended to hire a female candidate, to which Steinmetz objected.  Complaint ¶¶ 15, 17, 19, 20, 21, 22, 25, 26.  When the plaintiff expressed these concerns to Steinmetz, he responded by threatening her job security.  Complaint ¶¶ 22, 23.  In July 2020, the plaintiff communicated concerns to Pritchard about Steinmetz, including that Steinmetz treated her differently than other male campus CEOs and that he threatened her job.  Complaint ¶¶ 24, 28.

On June 17, 2021, the plaintiff communicated to Diane Mazza in Human Resources and David Levinson, Interim President of the Connecticut Community College, concerns about a meeting for which she had been summoned and her claim that Steinmetz had a pattern of discriminating against women.  Complaint ¶¶ 42-44.  Later that day, the plaintiff was informed that Steinmetz would be moving to non-continue her employment as CEO of MCC.  Complaint ¶ 45.  On August 24, 2021, Kripp informed the plaintiff that he was placing her on leave and that she was no longer acting in the capacity as the CEO of MCC.  Complaint ¶ 63.

## III.   STANDARD OF REVIEW

### A.   12(b)(6) Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires a complaint to plead "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. Proc. 8(a).  To withstand a motion to dismiss filed pursuant to Fed. R. Civ. Proc. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . . The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . .  Where a complaint pleads facts that are

merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556, 557) (internal quotation marks omitted).

In determining whether the plaintiff has met this standard, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the non-moving party. *See e.g., In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). However, courts do not accept as true a plaintiff's legal conclusions, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements…." *Iqbal*, 556 U.S. at 678.

In considering a motion to dismiss for failure to state a claim under Fed. R. Civ. Proc. 12(b)(6), a district court must limit itself to facts stated in a complaint or in documents attached to a complaint as exhibits or incorporated in a complaint by reference as well as matters of which judicial notice may be taken. *See Thurmand v. Univ. of Connecticut*, No. 3:18-CV-1140 (JCH), 2019 U.S. Dist. LEXIS 67690, at *5 (D. Conn. Apr. 22, 2019).

## IV.   ARGUMENT

### A.   <u>Plaintiff Cannot Assert Employment Discrimination or Retaliation Claims Under Title IX </u>(Counts One and Two)

The plaintiff, as an employee, cannot assert her claims against the defendants under Title IX. Title IX provides that " no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681 (a). The plaintiff is admittedly employed by CSCU as CEO of MCC (Complaint ¶ 2) and does not allege to have been a student there. All of the plaintiff's allegations against the defendants involve circumstances and events related to her employment by CSCU as CEO of MCC. Her claims

against the defendants arise from alleged discrimination and retaliation that she experienced in connection with her employment.  Although the plaintiff makes allegations against the defendants regarding discrimination against other women, each and every one of those allegations involves the defendants' alleged treatment of employees or prospective employees strictly in the employment context.  Complaint ¶¶ 36, 76.  Thus, this action is nothing more than a standard cause of action for employment discrimination and retaliation.  As such, the plaintiff's claims may only be brought under Title VII, not Title IX.

Although the Second Circuit has not definitively ruled on the question, many courts have held that employees of federally-funded educational institutions may not pursue employment discrimination claims under Title IX.  *See, e.g. Piscitelli v. Univ. of St. Joseph*, No. 3:19-CV-01589 (KAD), 2020 U.S. Dist. LEXIS 107335, at *2-3 (D. Conn. June 18, 2020) ("After an examination of the legislative history of both Title IX and Title VII, . . . Supreme Court jurisprudence discussing both statutes, and the case law developing across the country, this Court ultimately 'agree[d] with those courts that [have held that] there is no private remedy under Title IX for employment discrimination claims.'"), citing *Othon v. Wesleyan Univ.*, No. 18-cv-00958 (KAD), 2019 U.S. Dist. LEXIS 93062, at *2, 7-9 (D. Conn. March 27, 2020); *Dikambi v. City of N.Y.*, No. 19-CV-9937 (RA), 2021 U.S. Dist. LEXIS 174510, at *16-17 (S.D.N.Y. Sept. 14, 2021) ("The Court agrees with the balance of pervasive authority within the Second Circuit that Title VII provides the exclusive remedy for claims of employment discrimination like the ones brought here.  To hold otherwise would 'disrupt the balanced remedial scheme of Title VII,' which requires plaintiffs to exhaust their administrative remedies with the EEOC before bringing suit in federal court. . . . Permitting employees like [the plaintiff] to evade the requirements outlined by Congress simply because their employment involves 'an education program or activity' would effectively carve out

a special exception for that category of employees.  There is no indication in the text of Title IX, which was passed a mere eight years after Title VII, that Congress intended any such exception."); *Uyar v. Seli,* No. 3:16-CV-186 (VLB)*, 2017 U.S. Dist. LEXIS 30853, at \*16 (D. Conn. Mar. 6, 2017) ("However, Title VII is Plaintiff's exclusive remedy.  Plaintiff did not allege that she was a student, and all of the allegations in the Complaint focus on Plaintiff's employment with Yale. Title IX was not intended to enable employees of educational institutions complaining of gender discrimination to bypass the remedial scheme Congress established in Title VII.") (Quotations and citation and omitted); *Philpott v. New York,* 252 F. Supp. 3d 313, 318–19 (S.D.N.Y. 2017) ("Plaintiff was an employee, not a student . . . and his claim is quintessentially one for employment discrimination.  Title VII imposes an administrative exhaustion requirement that is absent from Title IX.  As many courts have previously held, allowing employees to sue for discrimination under Title IX would enable many federal employees to bypass the remedial process that Congress established under Title VII.  Accordingly, I join many other courts in this district, and hold that employment discrimination claims are not actionable under Title IX."); *Carter v. City of Syracuse Sch. Dist.*, No. 10 CV 690 (FJS/TWD), 2012 WL 930798 (N.D.N.Y Mar. 19, 2012) ("The weight of authority in this circuit outside of the Southern District supports a finding that Title VII provides the exclusive means under which a plaintiff may recover for employment discrimination on the basis of sex."); *Summa v. Hofstra Univ.*, No. CV 08-0361 (WDW), 2011 WL 1343058 at \* 18 (E.D.N.Y. Apr. 7, 2011) (dismissing Title IX discrimination claim because "the better argument is to limit an employee's avenue of redress to Title VII"); *affirmed in part, vacated in part on other grounds*, 708 F.3d 115 (2d Cir. 2013); *Urie v. Yale Univ.*, 331 F. Supp. 2d 94, 97–98 (RNC) (D. Conn. 2004) ("Title IX was not intended to enable employees of educational institutions complaining of gender discrimination to bypass the remedial scheme Congress established in Title

VII"); *Vega v. State Univ. of N.Y. Bd. of Trustees*, No. 97 Civ. 5767 (DLC), 2000 WL381430 at *

3 (S.D.N.Y. Apr. 12, 2000) ("Title VII provides the exclusive remedy for individuals alleging

employment discrimination on the basis of sex"); *Burrell v. City University of New York*, 995 F.

Supp. 398, 408-410 (S.D.N.Y. 1998); *but see Kohlhausen v. SUNY Rockland Cmty. College*, No.

10-CV 3168 (JSG), 2011WL 1404934 (S.D.N.Y. Feb. 9, 2011) (holding that "Title IX provides a

private right of action against gender discrimination to employees of federally-funded educational

institutions, and . . . this Title IX right of action is not preempted although a remedy under Title

VII is also available").

Other circuit courts are split on the issue of whether plaintiffs can bring employment

discrimination claims under Title IX, or whether they are limited to Title VII.  The Fifth Circuit,

like many of the Second Circuit District courts, have held that such claims are prohibited, *Lakoski*

*v. James*, 66 F.3d 751, 753 (5th Cir. 1995), *cert denied* 519 U.S. 947 (1996) ("We are not persuaded

that Congress intended that Title IX offer a bypass of the remedial process of Title VII.  We hold

that Title VII provides the exclusive remedy for individuals alleging employment discrimination

on the basis of sex in federally funded educational institutions."), while the First and Fourth

Circuits have allowed such claims.  *See Preston v. Virginia ex rel. New River Cmty. Coll.*, 31 F.3d

203, 205-06 (4th Cir. 1994); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 897 (1st Cir. 1988).

This court should follow the persuasive reasoning of the Fifth Circuit and district courts in our

circuit prohibiting employment discrimination claims under Title IX.

Title VII is the statutory mechanism that specifically prohibits discrimination in the

workplace. It provides:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to
> hire or to discharge any individual, or otherwise to discriminate against any
> individual with respect to his compensation, terms, conditions, or privileges of
> employment, because of such individual's race, color, religion, sex, or national

origin . . .
42 U.S.C. § 2000e-2(a)(1).

Critically, Title VII requires employees to exhaust administrative remedies prior to filing a claim. *See* 42 U.S.C. § 2000e-5(b)-(f). Allowing employees to pursue employment discrimination claims pursuant to Title IX, which does not have an exhaustion requirement, would create an exception to the stringent administrative procedures pursuant to Title VII solely for employees working in educational institutions. *See Vega*, 2000 WL 381430 at * 3 ("To hold that Title IX permits a private right of action for employment-related discrimination would be to offer employees of educational institutions receiving federal funds a mechanism for relief that differs significantly from the avenues available for other employees."); *see also Burrell*, 995 F. Supp. at 410. This cannot be what Congress intended. *Vega*, 2000 WL 381430 at * 3 ("If Congress had intended to depart from the structure it established in Title VII and allow a private plaintiff to circumvent that remedial scheme simply by framing his complaint in terms of Title IX, it would have done so explicitly.").

Further, the Supreme Court has held that Title VII provides the exclusive judicial remedy for federal employees' claims of employment discrimination. *Brown v. General Servs. Admin.*, 425 U.S. 820, 835 (1976). In doing so, the Court noted that "in a variety of contexts the Court has held that a precisely drawn, detailed statute pre-empts more general remedies." *Id*. at 834. Here, where Title VII sets forth a precise, detailed set of rights, with specific prerequisites to enforcing those rights, employees cannot use Title IX to bypass those requirements.

The Second Circuit's analysis and determination concerning employment discrimination claims brought pursuant to the ADA is also illustrative. Title I of the ADA provides in pertinent part that: "[n]o covered entity [which includes government employers] shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Title II of the ADA provides that "[s]ubject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. For many years, it remained an open question whether a plaintiff could bring an employment discrimination claim under Title II of the ADA, when Title I of the ADA expressly dealt with that subject. Courts within this district were divided with many favoring an expansive approach and allowing employment claims to be advanced under Title II.

The Second Circuit ultimately concluded that, due to the structure of the ADA, including differences between Title I and Title II, Congress did not intend to extend Title II to employment discrimination claims. *Mary Jo C. v. N.Y. State & Local Ret. Sys.*, 707 F.3d 144, 168-69 (2d Cir.) *cert. denied* 133 S. Ct. 2823 (2013). The Second Circuit relied on numerous differences between the titles, including Title I's various limitations on suits against an employer, which are absent from Title II. For example, while Title I caps the amount of compensatory damages a plaintiff may recover in certain instances, and disallows punitive damages in suits against governmental employers, Title II does not have such limitations. *Id*. at 170 (citing 42 U.S.C. § 1981a(b)(3)). Further, unlike Title II, Title I requires a plaintiff to exhaust administrative remedies prior to bringing suit. *Id*. The Second Circuit relied on the logic of other courts in finding that these differences precluded plaintiffs from avoiding the limitations of Title I by bringing an employment claim under Title II. *Id*. at 170-71 ("[a]pplying Title II to public employees would nullify these statutory limits for a significant category of employment discrimination plaintiffs.") (citing *Cormier v. City of Meriden*, No. 3:03 cv 1819 (JBA), 2004 U.S. Dist. LEXIS 21104, at *26 (D.

Conn. Sept. 30, 2004)).  This logic had been applied to other statutes, because "it would make no sense for Congress to provide . . . different sets of remedies, having different exhaustion requirements, for the same wrong committed by the same employer."  *Id*. at 171 (citing *McGuinness v. U.S. Postal Serv.*, 744 F.2d 1318, 1321 (7th Cir. 1984)).

That same logic applies here. Title VII caps the amount of compensatory damages available to plaintiffs, whereas Title IX does not.  *See* 42 U.S.C. § 1981a(b)(3)(D).  Title VII requires plaintiffs to raise their allegations of discrimination sooner and to exhaust their administrative remedies prior to bringing suit, whereas Title IX does not.  *See* 42 U.S.C. § 2000e-5(b)-(f).  Title VII explicitly prohibits employment discrimination, whereas Title IX prohibits discrimination and exclusion from the benefits of education programs.  *Compare* 42 U.S.C. § 2000e-2(a) with 42 U.S.C. § 1681(a).  It would be illogical for Congress to have enacted Title VII in 1964, setting forth detailed administrative prerequisites to filing an employment discrimination lawsuit, and later enact Title IX intending to offer different remedies and eliminating exhaustion requirements for the same cause of action where the employer is an educational institution.  The common understanding of benefits of education programs is benefits to students who participate in programs, not benefits to employees who service and administer those programs.  Their protection from discrimination and retaliation lies in the earlier enacted Title VII which does not cover students.  *Philpott,* 252 F. Supp. 3d at 318–19.

That logic applies equally to retaliation claims brought by employees of education programs under Title IX, particularly when their complaints concern their own employment status. Admittedly, in *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167 (2005), the Supreme Court held that a private right of action exists in Title IX for retaliation in the context of a retaliation claim by a basketball coach employed by a school district for complaining about discriminatory treatment

of the school's female team on the basis of sex. *Id*. at 171-172. However, that case is distinguishable on its facts. There, the protected activity by the coach was a complaint about discrimination on the basis of sex against students being deprived of the educational benefits of a program, a core purpose of Title IX. Whereas here, the alleged protected activity was complaints of discrimination on the basis of sex against the plaintiff in her capacity as an employee, for which the plaintiff has an available remedy under Title VII. This court should refuse to recognize a private cause of action under Title IX because to do so would "disrupt a carefully balanced remedial scheme for redressing employment discrimination by employers . . . ." *Lakoski v. James*, 66 F.3d 751, 754 (5th Cir. 1995).

Indeed, in sustaining a private right of action for retaliation under Title IX, the Court in *Jackson* observed that ". . .teachers and coaches such as Jackson are often in the best position to vindicate the rights of their students because they are better able to identify discrimination and bring it to the attention of administrators. Indeed, sometimes adult employees are '"the only effective adversar[ies]"' of discrimination in schools. *Jackson*, 544 U.S. at 181. Here, by contrast, the protected activity upon which the plaintiff relies is her own complaints about alleged discrimination in her capacity as an employee of CSCU, a core purpose of Title VII, and not the vindication of the rights of students.

Accordingly, Counts One and Two alleging violations of Title IX against the defendants should be dismissed for failure to state a claim upon which relief may be granted.

## V.     CONCLUSION

For the foregoing reasons, the defendants respectfully request that the Court grant their Motion to Dismiss the plaintiff's Title IX claims found in Counts One and Two of her Complaint.

DEFENDANTS
BOARD OF REGENTS OF HIGHER
EDUCATION, CONNECTICUT STATE
COLLEGES & UNIVERSITIES,
ROBERT STEINMETZ, ALICE
PRITCHARD, ANDREW KRIPP
IN THEIR INDIVIDUAL AND OFFICIAL
CAPACITIES

WILLIAM TONG
ATTORNEY GENERAL

By:    /s/ Sarah T. Bold
       Sarah T. Bold (ct30504)
       Inez Diaz-Galloza (ct29924)
       Assistant Attorneys General
       Office of the Attorney General
       Employment Section
       165 Capitol Avenue, Suite 5000
       Hartford, CT  06106
       Tel: (860) 808-5340
       Fax.: (860) 808-5383
       Federal Bar No. ct29924
       Email: Sarah.Bold@ct.gov
              Inez.Diaz-Galloza@ct.gov

## CERTIFICATION

I hereby certify that on October 5, 2021 a copy of the foregoing was filed electronically.

Notice of this filing was sent by e-mail to all parties by operation of the Court's electronic filing

system.  Parties may access this filing through the Court's system

/s/ Sarah T. Bold
Sarah T. Bold (ct30504)
Assistant Attorney General

11