# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____

| | | |
|---|---|---|
| **NICOLE ESPOSITO,** | : | **CIVIL ACTION NO.** |
| **Plaintiff** | : | |
| | : | **3:21-cv-1149 (SRU)** |
| **v.** | : | |
| | : | |
| **BOARD OF REGENTS OF HIGHER** | : | |
| **EDUCATION; CONNECTICUT STATE** | : | |
| **COLLEGES AND UNIVERSITIES;** | : | |
| **ROBERT STEINMETZ, in his individual** | : | |
| **and official capacities;** | : | |
| **ALICE PRITCHARD, in her individual** | : | |
| **and official capacities; and** | : | |
| **ANDREW KRIPP, in his individual** | : | |
| **and official capacities.** | : | |
| **Defendants** | : | |

_____: **FEBRUARY 22, 2022**

## FIRST AMENDED COMPLAINT

## I.   INTRODUCTION

1.   The Connecticut State Colleges & Universities, and Defendants Robert Steinmetz, Alice

Pritchard, and Andrew Kripp have discriminated against Plaintiff Nicole Esposito based

on sex, and retaliated against Nicole Esposito for opposing discrimination and retaliation

and speaking out on matters of public concern.  Connecticut State Colleges &

Universities has also subjected other women to discrimination and retaliation, and denied

women equal employment opportunities.  By discriminating and retaliating against

Nicole Esposito, and by engaging in a pattern and practice of discriminating and

retaliating against other women, while receiving federal funds to support its activities,

Connecticut State Colleges and Universities has violated Title IX of the Education

Amendment Act of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX").  Defendants Robert

Steinmetz, Alice Pritchard, and Andrew Kripp have also violated Nicole Esposito's rights under the First Amendment and the Fourteenth Amendment of the U.S. Constitution by subjecting her to sex discrimination and retaliation. Defendants Board of Regents of Higher Education and Connecticut State Colleges and Universities also discriminated against Plaintiff because of sex and retaliated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964.  Plaintiff is seeking monetary damages and prospective injunctive relief.

## II.   <u>PARTIES</u>

2. Plaintiff, Nicole Esposito, is an individual residing in Massachusetts who was previously employed by the Connecticut State Colleges & Universities.  Plaintiff is a female.

3. Defendant Board of Regents of Higher Education is the governing body for the regional community-technical college system, the Connecticut State University System and Charter Oak State College.  Conn. Gen. Stat. § 10a-1a *et seq.*

4. Defendant Board of Regents of Higher Education governs and oversees the Connecticut State Colleges and Universities, and its System Office.  Defendant Board of Regents of Higher Education has the sole power to appoint and remove Campus CEO's for the colleges within the Connecticut State Colleges & Universities System.

5. Defendant Connecticut State Colleges & Universities has its central offices located at 61 Woodland Avenue, Hartford, Connecticut.

6. Throughout this Complaint, Defendant Board of Regents of Higher Education and Defendant Connecticut State Colleges & Universities are referred to collectively as "CSCU."

7.  Defendant CSCU is an educational program or activity receiving Federal financial assistance under 20 U.S.C. § 1681(a).

8.  Defendant CSCU is an employer subject to the requirements of Title VII of the Civil Rights Act of 1964.  Defendant CSCU employs more than 15 employees.

9.  In addition to the employees who work at the seventeen colleges and universities that comprise the CSCU system, Defendant CSCU employs individuals who work at the CSCU System Office.

10. Manchester Community College ("MCC") is one of the colleges in the CSCU system.

11. Defendant Robert Steinmetz ("Steinmetz") is an individual residing in Connecticut. Steinmetz is employed by Defendant CSCU as Regional President for Region One/Capital-East.  At all times relevant to this complaint, Steinmetz has acted under color of state law and was personally involved in acts of discrimination and retaliation against Plaintiff.

12. Defendant Alice Pritchard ("Pritchard") is an individual residing in Connecticut. Pritchard is employed by Defendant CSCU as the Chief of Staff for the CSCU System and a member of the System Office leadership.  At all times relevant to this complaint, Pritchard has acted under color of state law and was personally involved in acts of discrimination and retaliation against Plaintiff.

13. Defendant Andrew Kripp ("Kripp") is an individual residing in Connecticut.  Kripp is employed by Defendant CSCU as Vice President of Human Resources.  At all times relevant to this complaint, Kripp has acted under color of state law and was personally involved in acts of discrimination and retaliation against Plaintiff.

**III.   <u>JURISDICTION</u>**

14. This Court has jurisdiction over this action because Plaintiff's claims under Title VII, Title IX, and 42 U.S.C. § 1983 present federal questions under 28 U.S.C. § 1331.  This Court also has jurisdiction over this matter under 28 U.S.C. § 1332 because the parties are completely diverse and the amount in demand exceeds $75,000.00.

IV.   **BACKGROUND**

15. After a previous period of employment at Manchester Community College in which Plaintiff served as a member of the faculty and on various committees, on April 28, 2020, Defendant CSCU offered Plaintiff the position of Campus Chief Executive Officer ("CEO") for Manchester Community College, effective July 6, 2020.

16. As Campus CEO for MCC, Plaintiff reported to Steinmetz.

17. During the relevant time period, Steinmetz has reported to Pritchard.

18. Steinmetz began making sexist statements to Plaintiff very early during her tenure as Campus CEO.

19. For instance, Steinmetz repeatedly stated to Plaintiff that he did not like her "tone of voice" and that he did not like the way that Plaintiff spoke.  When Plaintiff asked Steinmetz for specifics, he was unable to offer any specific criticisms, but he stated further that Plaintiff was "off-putting."

20. Early in Plaintiff's tenure as Campus CEO, Steinmetz also made sexist comments about another professional woman.  When Plaintiff communicated an intention to hire an extremely qualified and highly educated woman for an important leadership position in her administration at MCC, Steinmetz objected and stated that he did not like her.

21. When Plaintiff asked Steinmetz to provide the basis for his opposition, he did not question her qualifications or her credentials.  Instead, Steinmetz responded with concerns regarding how much the female applicant talked during her interview.

22. Plaintiff informed Steinmetz that she was going to hire the female applicant despite his objection because Plaintiff felt strongly that she was the best candidate.

23. In July 2020, after Steinmetz repeatedly criticized Plaintiff's tone and characterized Plaintiff as off-putting based on her communication style and delivery, and after Steinmetz objected to Plaintiff's desire to hire another highly qualified female for a leadership position because he felt that she talked too much, Plaintiff expressed to Steinmetz directly that his comments were sexist.

24. Steinmetz responded directly by threatening Plaintiff's job security and stated, "you are only a week in and already acting like this.  We will see if you work out here."

25. Shortly thereafter in July 2020, Plaintiff communicated concerns to Pritchard about Steinmetz and his conduct, including Plaintiff's concerns that Steinmetz was treating her differently than other male campus CEOs, and that Steinmetz threatened Plaintiff's job after Plaintiff attempted to address these issues with him.

26. As part of Plaintiff's July 2020 communication to Pritchard, Plaintiff included details regarding the statements by Steinmetz criticizing her "tone" and calling her "off-putting," and Steinmetz's objection to the hiring of a brilliant and highly qualified female candidate for a reason that included his criticism of how much she talked during her interview.

27. As part of Plaintiff's July 2020 communication to Pritchard, Plaintiff stated:  "From the day I started I have sensed belittling when he speaks to me and he seems to consistently

remind me that he is displeased with my 'tone' and my 'delivery.' He explicitly told me 'It is not necessarily what you are saying, its just that your delivery is very off-putting.' As a professional woman, I was very surprised to hear this."

28. As part of Plaintiff's July 2020 communication to Pritchard, Plaintiff explained that initially she wondered "Perhaps it's a cultural difference or male/female issue? I am not sure, but at first I told him I respectfully disagree and I hope he understands that it is not my intent to be disrespectful. I am just very direct."

29. As part of Plaintiff's July 2020 communication to Pritchard, Plaintiff explained that after additional examples of Steinmetz's sexism, including his further criticism of Plaintiff's "tone" and his criticism of the female applicant for how much she spoke during her interview, Plaintiff decided to speak up directly to Steinmetz and expressed to Pritchard that: "I will continue to remain professional and am happy to accept direction. However, I am beginning to believe that is not what is happening here. I am told that this is not happening to Steve Minkler or Duncan Harris [two other male campus CEOs who report directly to Steinmetz]. Given Robs comment about my role as the CEO of MCC might not work out, I am now deeply concerned that he threatened my job. It is true that I spoke up for myself yesterday and I was clearly offended by his comments. This was not well received by Rob."

30. In Plaintiff's July 2020 communication to Pritchard, Plaintiff expressed that she was providing information in advance of an expected opportunity to discuss the issues with Pritchard further by phone.

31. In response to Plaintiff's July 2020 complaint, which expressed concerns about sexism by Steinmetz against Plaintiff and another woman, and alleged disparate treatment by

Steinmetz between Plaintiff and similarly situated men, Pritchard failed to address the serious concerns that Plaintiff raised.

32. In response to Plaintiff's complaint regarding sexism by Steinmetz, Pritchard did not conduct any investigation or notify the Office of Equal Employment Opportunity. Pritchard did not even speak with Plaintiff by phone regarding her complaint.

33. Instead, Pritchard sent Plaintiff an e-mail which essentially advised Plaintiff to go back and work things out with Steinmetz.

34. Pritchard, one of CSCU's senior leaders and Steinmetz's supervisor, responded to Plaintiff's complaint with deliberate indifference.

35. Following July 2020, and following CSCU's failure to investigate Plaintiff's complaints, Steinmetz continued to act in ways that belittled and demeaned Plaintiff, and he refused to acknowledge Plaintiff's positive job performance.

36. For instance, despite the challenges presented by the COVID-19 pandemic, MCC finished the year with a $2 million budget surplus and was recognized as the top community college in Connecticut.  Despite those accomplishments, and others, Steinmetz never acknowledged Plaintiff's positive performance nor provided Plaintiff with a performance evaluation.

37. In conversations with Plaintiff's colleagues over time, Plaintiff became aware that Steinmetz also treated other women who reported to him badly, and that he treated the men who reported to him more favorably.

38. After Plaintiff complained in July 2020 directly to Steinmetz and then to Pritchard, she became aware of additional examples when Steinmetz discriminated against other

women, tolerated discriminatory acts by others, and retaliated against people who opposed discrimination.

39. As the end of Plaintiff's first year appointment as Campus CEO approached, Defendants attempted to carry out the threat to Plaintiff's job that Steinmetz made back in July 2020 when Steinmetz indicated in response to Plaintiff's opposition to his sexist remarks that she would not last here.

40. On Wednesday, June 16, 2021, Steinmetz sent Plaintiff an e-mail, copied to CSCU General Counsel Ernestine Weaver, mandating that Plaintiff appear for a meeting the following afternoon at 4:00 p.m.

41. Plaintiff asked questions about the meeting so that she could be prepared, which Steinmetz disregarded.

42. The following morning, June 17, 2021, Attorney Weaver informed Plaintiff that she did not need to prepare for the meeting because Plaintiff would not be required to speak during the meeting, but would only be required to listen as Steinmetz and Attorney Weaver presented Plaintiff with information.

43. In advance of the meeting with Steinmetz and Attorney Weaver on June 17, 2021, Plaintiff communicated concerns to Diane Mazza in Human Resources, and also to David Levinson, Interim President of the Connecticut Community College.

44. In these communications, Plaintiff expressed concern about the meeting to which Steinmetz had summoned her and once again reiterated concerns that Steinmetz had a pattern of discriminating against women and provided examples of other women who had also raised concerns regarding Steinmetz's conduct.

45. When Plaintiff conveyed her concerns to Levinson on June 17, Levinson agreed that Steinmetz should not be treating women that way and confirmed that Plaintiff was not the first person who expressed concerns to him about Steinmetz's treatment of women, but Levinson deflected responsibility.  As Levinson expressed it to Plaintiff, because Steinmetz reported to Pritchard, there was not much that he could do.

46. Later in the afternoon on June 17th, Steinmetz and Weaver met with Plaintiff and notified her that Steinmetz would be moving to non-continue her appointment as CEO of MCC, but failed to explain why Steinmetz and CSCU were taking that action.

47. During the meeting on June 17th, Plaintiff repeatedly asked Steinmetz and Attorney Weaver to explain the basis for the decision, but neither Weaver nor Steinmetz offered any justification or rationale.

48. At no time during the June 17th meeting did Weaver or Steinmetz allege that the decision to not renew Plaintiff's appointment was based on any deficiencies in Plaintiff's performance.  In fact, neither Steinmetz nor Weaver identified any deficiencies in Plaintiff's performance during that meeting.

49. Instead, Weaver and Steinmetz attempted to pressure Plaintiff into resigning from her position as Campus CEO of MCC and signing a stipulated agreement proposed by CSCU that included a general release and waiver of claims, and an agreement to refrain from making any public or private disparaging remarks.  The proposed agreement presented to Plaintiff on June 17th identified Pritchard as the signatory on behalf of CSCU.

50. During the June 17th meeting, Weaver implied that if Plaintiff did not agree to resign from her position and sign the agreement offered by CSCU that things would become public and that would not be good for Plaintiff.

51. During the June 17th meeting, Weaver indicated to Plaintiff that the CSCU Board of Regents was already on board with the decision to not renew her appointment.

52. Weaver told Plaintiff that the Board of Regents was already on board with the decision to not renew her appointment in order to pressure Plaintiff into resigning from her position as Campus CEO, and accepting the proposed stipulated agreement that included a waiver of Plaintiff's rights to bring claims against CSCU, and a promise to not make public or private disparaging remarks.

53. During the June 17th meeting, Weaver indicated that Plaintiff needed to provide an answer as to whether Plaintiff would be accepting the proposed stipulated agreement by 3:00 p.m. on June 23, 2021 because, according to Weaver, the Board of Regents would be meeting and voting on the non-continuation of Plaintiff's employment at their public meeting on June 24, 2021 if Plaintiff did not resign from her position and accept the stipulated agreement by that time.

54. Pritchard and Kripp were also involved in the decision to attempt to remove Plaintiff from her position in June 2021.  Jane Gates, CSCU's Interim President at the time, was also involved in discussions in June 2021 concerning removing Plaintiff from her position.

55. On June 23, 2021, Plaintiff's legal counsel sent a letter to Weaver on Plaintiff's behalf opposing discrimination and retaliation against Plaintiff, as well as a pattern and practice of discrimination against others, and demanded that CSCU refrain from taking any further adverse actions against Plaintiff.  The June 23, 2021 letter is incorporated herein by reference.

56. In response to the June 23, 2021 letter from Plaintiff's legal counsel, Weaver sent a letter to Plaintiff's legal counsel on June 23, 2021, which confirmed that the Board of Regents would not be taking action regarding the non-continuation of Plaintiff's employment the following day, but Weaver's letter disputed the actions taken by Weaver during the June 17th meeting.

57. Following June 24, 2021, Defendants subjected Plaintiff to additional acts of discrimination and retaliation.

58. After June 24, 2021, CSCU communicated to Plaintiff, through her legal counsel, that it had retained a law firm to conduct a full and complete investigation into Plaintiff's allegations of discrimination and retaliation.  It was represented to Plaintiff, through her legal counsel, that the law firm would be independent.

59. In July 2021, Plaintiff and her legal counsel met with the law firm hired by CSCU and provided that law firm with details and documents regarding discrimination and retaliation against Plaintiff, as well as numerous examples demonstrating a pattern and practice of discrimination and retaliation at CSCU against other women.

60. On August 18, 2021, Kripp presented Plaintiff with another proposed stipulated agreement by CSCU which included terms requiring Plaintiff to resign from her position as Campus CEO of MCC, release and waive all claims, covenant to not file claims in court or with administrative agencies, and promise to not make disparaging comments.

61. If Plaintiff agreed to the terms of the stipulated agreement that Kripp proposed on August 18, 2021 before 12:00 noon on August 24, 2021, CSCU would have continued Plaintiff's employment for another 12 months, and continued to pay Plaintiff her full salary and benefits for another 12 months.

62. On August 18, 2021, Kripp further notified Plaintiff that, if she did not accept the proposed agreement by 12:00 noon on August 24, 2021, the Board of Regents would be convened to consider the non-renewal of Plaintiff's appointment.

63. On August 18, 2021, Plaintiff learned for the first time that the law firm hired by CSCU to conduct the investigation was not actually independent.  Plaintiff learned on that date that CSCU hired a law firm that represents and advises CSCU on labor and employment matters and that works closely with Kripp on union negotiations to "investigate" her allegations of discrimination and retaliation.  Plaintiff also learned that the law firm hired by CSCU prepared a report which contained numerous deficiencies and failed to consider or address significant information that Plaintiff and her legal counsel provided to the law firm relating to discrimination and retaliation against Plaintiff, as well as relating to discrimination and retaliation against other women at CSCU.

64. At approximately 12:00 noon on August 24, 2021, Plaintiff notified Kripp that her lawyers would be communicating with the Office of the Attorney General for the State of Connecticut later that day regarding this matter.

65. Shortly after 12:00 noon on August 24, 2021, after Plaintiff failed to sign the stipulated agreement before the deadline communicated by Kripp, Kripp called Plaintiff and informed Plaintiff that, effective immediately, he was placing her on leave, that she was no longer acting in the capacity as the CEO of Manchester Community College, and that she was prohibited from communicating with any member of the CSCU community, including employees, faculty, staff, and students.  Kripp also directed Plaintiff to remove her belongings from campus.

66. On August 24, 2021, Defendants also discontinued Plaintiff's access to her e-mail and CSCU information technology systems.

67. On August 24, 2021, Kripp suspended Plaintiff, effective immediately, without cause and in violation of CSCU policies and procedures.

68. Steinmetz and Pritchard were involved in the decision to suspend Plaintiff on August 24, 2021.

69. Other than the fact that Plaintiff failed to sign the stipulated agreement by the deadline imposed by Kripp on August 24, 2021, Defendants provided no explanation to Plaintiff in support of the actions taken against her.

70. On August 24, 2021, Plaintiff's legal counsel sent correspondence to the Office of the Attorney General of the State of Connecticut objecting to the most recent act of discrimination and retaliation committed by Defendants against Plaintiff on that date, demanded that Plaintiff be immediately reinstated to her position as Campus CEO, communicated that Plaintiff had filed claims of discrimination and retaliation with the Connecticut Commission on Human Rights and Opportunities ("CHRO") alleging violations of Title VII of the Civil Rights Act of 1964, and also provided significant details regarding the deficiencies and failures in the report provided by CSCU's law firm. Defendant CSCU received a copy of the August 24, 2021 letter from Plaintiff's legal counsel in August 2021.

71. After Kripp suspended Plaintiff on August 24, 2021, Steinmetz assumed Plaintiff's responsibilities.

72. On the morning of August 25, 2021, Steinmetz personally notified the members of Plaintiff's cabinet at MCC that Plaintiff was on administrative leave and that he would be assuming Plaintiff's responsibilities.

73. Later on August 25, 2021, Terrence Cheng, President of CSCU, sent a message to the entire MCC community stating that Plaintiff "is out of the office at this time," and that Steinmetz would be assuming Plaintiff's responsibilities at MCC.

**Additional Acts of Discrimination and Retaliation After Plaintiff Filed Lawsuit**

74. On August 27, 2021, Plaintiff filed her complaint in U.S. District Court.  In that complaint, Plaintiff alleged sex discrimination and retaliation in violation of Title IX and the Fourteenth Amendment, and retaliation in violation of the First Amendment. Plaintiff's complaint addressed matters of public concern, including a pattern and practice of discrimination and retaliation at CSCU, and violations of federal law by senior officials at CSCU, including Steinmetz, Kripp, and Pritchard.

75. Defendant CSCU and Defendants Steinmetz, Kripp, and Pritchard, all received notice of Plaintiff's federal court complaint on August 27, 2021, or shortly thereafter.

76. Defendants committed additional acts of discrimination and retaliation against Plaintiff after she filed her federal court complaint on August 27, 2021.

77. On August 27, 2021, Plaintiff wrote to Kripp, the CSCU President, and the Board of Regents, and requested a hearing relating to her August 24, 2021 suspension under CSCU's Human Resources Policies and Procedures, which identify suspension as a form of discipline that can only imposed for cause, and also require that CSCU provide due process to employees before and after imposing discipline such as suspension.  A copy of Plaintiff's August 27, 2021 request for hearing was also shared with Defendants' counsel.

78. When CSCU imposes discipline, including suspension, against a Campus CEO, CSCU's Policies and Procedures require that the Chair of the Board of Regents appoint a committee of three persons to hold a hearing within thirty (30) days of an employee's request for a hearing, and mandate that the committee issue a decision within ten (10) days after the conclusion of the hearing.

79. Even though Plaintiff submitted a timely request for a hearing on August 27, 2021 relating to her suspension on August 24, 2021, Defendants never provided Plaintiff with any due process relating to that action against her.  Not only did Defendants fail to provide Plaintiff with any pre-disciplinary due process before they suspended her, but Defendants also never provided Plaintiff with a hearing relating to her suspension after she requested one on August 27, 2021.  The Chair of the Board of Regents never appointed a committee of three persons to hold a hearing relating to the suspension within 30 days of Plaintiff's request as required by Defendant CSCU's own policies and procedures.  Defendants asserted the power to suspend Plaintiff, indefinitely, without any due process, which does not exist under CSCU's own policies and procedures, and completely disregarded the limits on the ability to suspend employees imposed by CSCU's own policies and procedures.

80. On September 15, 2021, the CHRO served CSCU with a copy of the charge of discrimination and retaliation that Plaintiff filed in August, 2021, and in which Plaintiff alleged sex discrimination and retaliation in violation of Title VII, in addition to state law.  Said charge was designated as CHRO No. 2210068, and EEOC No. 16A-2021-01376.

81. On September 16, 2021, Plaintiff filed a motion in U.S. District Court seeking a preliminary injunction and asking the Court to enjoin Defendants from any further acts of retaliation against Plaintiff.  In support of that motion, Plaintiff argued that Defendants were violating federal laws which prohibited retaliation against employees who oppose discrimination, and that Defendants violated federal law by seeking an agreement from Plaintiff that she would not file claims of discrimination with administrative agencies such as the EEOC, and that Defendants violated federal law by conditioning Plaintiff's continued employment on her accepting their proposed stipulated agreement that included a general release of claims, a covenant not to sue, and a non-disparagement restriction.  Plaintiff's September 16, 2021 motion for preliminary injunction also requested that the Court order Defendants to reinstate Plaintiff to her position.

82. Defendants' counsel received notice of Plaintiff's preliminary injunction motion and supporting documents on September 16, 2021.

83. On September 17, 2021, Kripp notified Plaintiff for the first time that Defendants were moving to terminate Plaintiff's employment for cause.

84. Kripp's September 17, 2021, notice of discipline claimed vague and general alleged deficiencies by Plaintiff that Defendants had not previously communicated to Plaintiff before she filed her complaint in U.S. District Court.  Kripp's September 17, 2021 notice of discipline neither disclosed the factual basis for the charges, nor the evidence supporting the charges, nor an explanation of the evidence supporting the charges.

85. Kripp's September 17, 2021 notice of discipline claimed that Steinmetz recommended terminating Plaintiff's employment for cause.  Pritchard and Ernestine Weaver were also personally involved in CSCU moving to terminate Plaintiff's employment for cause.

86. Kripp's September 17, 2021, notice of discipline informed Plaintiff that he was advancing the recommendation to terminate Plaintiff's employment for cause to Jane Gates, who was then CSCU's Provost and Senior Vice President for Academic Affairs, and that Plaintiff would have an opportunity to meet with Jane Gates on September 23, 2021.

87. In response to the September 17, 2021, notice of discipline, Plaintiff's counsel requested that CSCU provide additional evidence and information supporting the charges made by CSCU against her in accordance with Plaintiff's constitutional rights to due process, and that CSCU delay the September 23, 2021 meeting with Jane Gates until CSCU provided Plaintiff with that information.

88. CSCU refused to postpone the September 23, 2021, meeting with Jane Gates and refused to provide Plaintiff with additional information or documents supporting the charges against her before the September 23, 2021 meeting.

89. On September 23, 2021, Plaintiff and her counsel attended a meeting with Jane Gates.  At the September 23, 2021 meeting, Plaintiff provided Jane Gates with documents supporting her allegations of discrimination and retaliation, including her filings in U.S. District Court, the complaint Plaintiff filed with the CHRO, the correspondence from Plaintiff's counsel dated June 23, 2021 and August 24, 2021, and the communications from Plaintiff's counsel in response to the September 17, 2021, notice of discipline.

90. At the September 23, 2021 meeting, Plaintiff conveyed how CSCU had interfered with and prejudiced her ability to respond to the charges against her, and that Plaintiff would be able to respond further if CSCU provided additional information relating to the charges against her.

91. On October 26, 2021, Kripp provided Plaintiff with a position statement, along with Exhibits A through W, that Kripp, Pritchard, Steinmetz, and Ernestine Weaver prepared and submitted to Jane Gates in connection with Jane Gates's review of the recommendation to terminate Plaintiff's employment for cause.  In the October 26, 2021, position statement, Kripp, Pritchard, Steinmetz, and Ernestine Weaver set forth arguments why CSCU should terminate Plaintiff's employment for cause.

92. The October 26, 2021 position statement and supporting exhibits prepared by Kripp, Steinmetz, Pritchard, and Ernestine Weaver included direct evidence of retaliation.  The October 26, 2021, position statement and supporting exhibits included direct evidence that CSCU, Steinmetz, Kripp, Pritchard, and Ernestine Weaver were moving to terminate Plaintiff's employment for illegal reasons.  The October 26, 2021, position statement and supporting exhibits was also replete with evidence of pretext and disparate treatment. Steinmetz, Kripp, Pritchard, and Ernestine Weaver were all personally involved in preparing and approving the October 26, 2021 position statement and the exhibits attached to the October 26, 2021 position statement.

93. In the October 26, 2021 position statement, CSCU argued that it had authority to place Plaintiff on administrative leave on August 24, 2021 under the Article of the CSCU Policies and Procedures which governs suspensions.

94. On October 28, 2021, Plaintiff's counsel wrote to Defendants' counsel to demand that, since CSCU had admitted that it acted under the Article of the CSCU Policies and Procedures which govern suspensions when it placed Plaintiff on administrative leave on August 24, 2021, and since Defendants had not complied with the due process

requirements which limited CSCU's authority to suspend employees under that Article, that CSCU must immediately reinstate Plaintiff to her position.

95. On November 10, 2021, Plaintiff submitted a written response to the October 26, 2021 position statement and attached exhibits.  Plaintiff provided her November 10, 2021 response to Jane Gates, and also to Defendants' counsel.

96. In her November 10, 2021 response, Plaintiff documented that the October 26, 2021, position statement and supporting exhibits included direct evidence of retaliation, and constituted direct evidence that CSCU was moving to terminate her employment for unlawful reasons.  In her November 10, 2021, response, Plaintiff documented that CSCU's October 26, 2021 position statement relied on the e-mail that Plaintiff sent to Pritchard in July 2020, which included protected activity, as one of the reasons that CSCU was seeking to terminate Plaintiff's employment.  In her November 10, 2021, response, Plaintiff documented that CSCU's October 26, 2021 position statement and attached exhibits claimed that Plaintiff's employment should be terminated for other reasons that also violated other federal and state laws.  In her November 10, 2021, response, Plaintiff demonstrated how the reasons identified in CSCU's October 26, 2021, position statement were false and/or pretextual, and how the Exhibits A through W attached to the October 26, 2021, position statement did not support the arguments included in CSCU's position statement.  In her November 10, 2021, response, Plaintiff documented that CSCU was moving to terminate her employment based on events which occurred many months earlier, and in some cases more than a year earlier, and for which CSCU had never disciplined Plaintiff at the time.  In her November 10, 2021 response, Plaintiff documented that CSCU was singling Plaintiff out for disparate treatment and

treating her differently than other Campus CEOs, including another male Campus CEO who reported to Steinmetz.

97. On December 3, 2021, Plaintiff provided Jane Gates with a statement from another Campus CEO that contained information supporting a conclusion that CSCU was relying on false and/or pretextual charges as a basis for seeking to terminate Plaintiff's employment for cause, and that CSCU was treating Plaintiff differently than other Campus CEOs.  Plaintiff's counsel delivered a copy of the December 3, 2021, statement to Defendants' counsel.

98. Notwithstanding the documentation provided to Jane Gates demonstrating the obvious acts of retaliation against Plaintiff, on December 8, 2021, Jane Gates issued a notice in which she stated that she found cause.  The December 8, 2021, notice from Jane Gates did not identify what she found to be cause, or provide any explanation or analysis regarding how she found cause.

99. On December 9, 2021, Kripp notified Plaintiff that her employment with CSCU was terminated, effective immediately.

100.    On December 10, 2021, Plaintiff requested a hearing relating to the termination of her employment pursuant to the CSCU Human Resources Policies and Procedures, and also requested that the Board of Regents and CSCU reinstate Plaintiff to her employment until there was a final decision following the hearing.

101.    In response to Plaintiff's December 10, 2021, request for a hearing, Kripp notified Plaintiff that the Chair of the Board of Regents had appointed a committee of three individuals to hold a hearing.

102.     During the hearing, which occurred in January 2022, Plaintiff elicited additional testimony which confirmed that Defendants retaliated against Plaintiff in violation of federal law.

103.     On February 9, 2022, the three-person committee appointed by the Chair of the Board of Regents issued written findings and did not reverse the termination of Plaintiff's employment.  Through its findings, the committee committed additional violations of Plaintiff's rights, including basing its decision on facially unlawful and/or pretextual reasons.  For instance, the committee's decision found that Defendants had cause to terminate Plaintiff's employment for cause, in part, because Plaintiff expressed concerns to the United States Department of Education.

104.     By terminating Plaintiff's employment for cause, Defendants have caused additional harm to Plaintiff that would not have occurred from a termination of employment without cause.

105.     Following August 18, 2021, Plaintiff made additional allegations of retaliation about which CSCU was aware, but CSCU never investigated any of those complaints of retaliation before terminating Plaintiff's employment

106.     Based on the foregoing, CSCU subjected Plaintiff to sex discrimination in violation of Title IX and Title VII, and Defendants Steinmetz, Pritchard, and Kripp discriminated against Plaintiff based on sex in violation of the Fourteenth Amendment.

107.     Based on the foregoing, Plaintiff engaged in protected activity under Title IX and Title VII, the Fourteenth Amendment, and the First Amendment, when she complained about and provided information relating to sex discrimination and retaliation against herself, and against other women at CSCU, and when Plaintiff complained about and

provided information relating to CSCU's failure to properly investigate, respond to, and prevent, sex discrimination and retaliation against herself and other women at CSCU, and Defendants retaliated against her because she engaged in those protected activities.

108.    Defendant CSCU acted with deliberate indifference to Plaintiff's rights under Title IX.

109.    Defendants Steinmetz, Pritchard, and Kripp acted with reckless indifference to Plaintiff's federally protected rights.

110.    CSCU has also engaged in a pattern and practice of discrimination and retaliation against other women, and against others who have opposed discrimination, including, but not limited to, the following:

    a. In January 2021, Steinmetz and another official in the CSCU System Office called an interim Campus CEO and directed the interim Campus CEO to not hire, for a discriminatory reason related to sex, the superior female candidate that the Campus CEO wanted to hire for a Financial Aid Director position, and directed the Campus CEO to issue a false and pretextual explanation for the decision.

    b. Steinmetz discriminated against a former female interim Campus CEO by treating her differently and more negatively than he treated male Campus CEOs, and treating her differently and more negatively than other applicants when she applied for the Campus CEO position on a permanent basis.

    c. Steinmetz has threatened the employment of other women who have stood up to him and stated that, if people cross him, he gets rid of them.

    d. Steinmetz demonstrated a tolerance for discrimination against women and others when, during a presentation regarding workplace civility at a Connecticut

community college in 2019, Steinmetz watched and listened and did nothing while the male presenter repeatedly made offensive racist and sexist comments which caused other employees to become visibly upset.  Steinmetz allowed the offensive presentation to last for more than an hour; it did not conclude until another administrator intervened and stopped the presentation.  After people complained, Steinmetz was later forced to apologize for his failure to act.

e.  An EEO (Equal Employment Opportunity) investigation at CSCU made findings against a male financial aid contractor at a Connecticut community college. When the female interim Campus CEO attempted to terminate the male financial aid contractor, Steinmetz favored continuing to retain the man despite his negative treatment towards women which the EEO investigation confirmed.

f.  Steinmetz engaged in retaliatory actions against the woman who filed the EEO complaint which resulted in the EEO findings against that male financial aid contractor, including by altering her job duties, attempting to prohibit her from campus, and subjecting her to a baseless and pretextual investigation.

g.  Steinmetz favored re-hiring another male at a Connecticut community college who was previously the subject of complaints to Human Resources by women and reportedly reprimanded and required to complete training.  Instead of completing the additional training, the male resigned his employment.  Subsequently, and with full knowledge of those facts, Steinmetz supported a proposal to bring that male back to work at CSCU even though he never completed the required trainings and despite the findings by Human Resources against him.

    h.  On August 25, 2021, shortly after Defendants suspended Plaintiff and Steinmetz assumed Plaintiff's responsibilities, Steinmetz revoked an offer of employment that Plaintiff had extended to an African-American female for a position at MCC.

    i.  Earlier in 2021, a group of women complained directly to the Board of Regents regarding sexism by Kripp.

111.    Other women in addition to Plaintiff have complained about sexism and/or retaliation at CSCU, but CSCU has failed to take appropriate action.


**COUNT ONE:**        **SEX DISCRIMINATION IN VIOLATION OF TITLE IX**

112.    Based on the foregoing, Defendant CSCU discriminated against Plaintiff because of sex in violation of Title IX, 20 U.S.C. § 1681 *et seq.*

113.    Defendant CSCU is an educational program or activity receiving Federal financial assistance within the meaning of Title IX.

114.    Defendant CSCU acted with deliberate indifference to Plaintiff's protected rights in violation of Title IX.

115.    Defendant CSCU subjected Plaintiff to numerous discriminatory acts in violation of Title IX, including, but not limited to, repeatedly attempting to remove her from her position as Campus CEO without cause, suspending Plaintiff from her position as Campus CEO without cause, sending harmful communications to others regarding Plaintiff's absence from the office, conditioning Plaintiff's continued employment on Plaintiff accepting the terms of Defendants' proposed stipulated agreement that included unlawful restrictions and a release of claims; moving to terminate Plaintiff's employment for cause for the first time after Plaintiff filed her federal court lawsuit and after CSCU

became aware that Plaintiff filed a charge of discrimination with CHRO and EEOC; and

terminating Plaintiff's employment.

116.     Defendant CSCU's actions caused Plaintiff to suffer economic and non-economic

damages.

117.     Plaintiff has incurred, and will continue to incur, attorney's fees and costs in

pursuing this action.

**COUNT TWO:     RETALIATION IN VIOLATION OF TITLE IX**

118.      Based on the foregoing, Defendant CSCU retaliated against Plaintiff in violation

of Title IX, 20 U.S.C. § 1681 *et seq*.

119.     Defendant CSCU is an educational program or activity receiving Federal financial

assistance within the meaning of Title IX.

120.     Defendant CSCU acted with deliberate indifference to Plaintiff's protected rights

in violation of Title IX.

121.     Plaintiff engaged in protected activity in July 2020 when she complained to

Steinmetz regarding his discriminatory comments and when she rejected Steinmetz's

opposition to hiring a supremely qualified female candidate and hired her despite

Steinmetz's objection; in July 2020 when she complained to Pritchard regarding

discrimination by Steinmetz; in June 2021 when she opposed sex discrimination and

retaliation by CSCU and Steinmetz against herself and other women and complained

about CSCU's institutional failure to properly respond to complaints of sexism by

Steinmetz; in July 2021 when she provided additional information regarding

discrimination and retaliation against herself and other women; in August 2021 when she

engaged in further opposition to acts of discrimination and retaliation by CSCU; in

August 2021 when Plaintiff filed her complaint in U.S. District Court; in September 2021

when Plaintiff filed her motion for preliminary injunction; and in her opposition to

discrimination and retaliation in September, October, November, and December 2021.

122.     Defendant CSCU had knowledge of Plaintiff's protected activity.

123.     Defendant CSCU subjected Plaintiff to numerous adverse actions because of her

protected activity, including, but not limited to, repeatedly attempting to remove her from

her position as Campus CEO without cause, suspending Plaintiff from her position as

Campus CEO without cause, sending harmful communications to others regarding

Plaintiff's absence from the office, conditioning Plaintiff's continued employment on

Plaintiff accepting the terms of Defendants' proposed stipulated agreement that included

unlawful restrictions and a release of claims; moving to terminate Plaintiff's employment

for cause for the first time after Plaintiff filed her federal court lawsuit and after CSCU

became aware that Plaintiff filed a charge of discrimination with CHRO and EEOC; and

terminating Plaintiff's employment.

124.     There is a causal connection between Plaintiff's protected activity and Defendant

CSCU's retaliatory adverse action against her.

125.     Defendant CSCU's actions caused Plaintiff to suffer economic and non-economic

damages.

126.     Plaintiff has incurred, and will continue to incur, attorney's fees and costs in

pursuing this action.

**COUNT THREE:     DISCRIMINATION IN VIOLATION OF FOURTEENTH
AMENDMENT**

127.     Based on the foregoing, Defendants Steinmetz, Pritchard, and Kripp discriminated

against Plaintiff because of her sex in violation of the Equal Protection Clause of the

Fourteenth Amendment, as enforced through 42 U.S.C. § 1983.

128.     Defendants Steinmetz, Pritchard, and Kripp subjected Plaintiff to numerous

discriminatory acts, including, but not limited to, repeatedly attempting to remove her

from her position as Campus CEO without cause, and suspending Plaintiff from her

position as Campus CEO without cause. Steinmetz also personally published harmful

communications to others regarding Plaintiff's absence from the office; a communication

which was almost certainly discussed with Pritchard and Kripp in advance of its

publication.  Steinmetz, Pritchard, and Kripp, also conditioned Plaintiff's continued

employment on Plaintiff accepting the terms of Defendants' proposed stipulated

agreement that included unlawful restrictions and a release of claims; moved to terminate

Plaintiff's employment for cause for the first time after Plaintiff filed her federal court

lawsuit and after CSCU became aware that Plaintiff filed a charge of discrimination with

CHRO and EEOC; and terminated Plaintiff's employment.

129.     Defendants' actions caused Plaintiff to suffer economic and non-economic

damages.

130.     Defendants acted with reckless indifference to Plaintiff's rights, thereby entitling

Plaintiff to punitive damages.

131.     Plaintiff has incurred, and will continue to incur, attorney's fees and costs in

pursuing this action.

**COUNT FOUR:       RETALIATION IN VIOLATION OF FOURTEENTH
                    AMENDMENT**

132.       Based on the foregoing, Defendants Steinmetz, Pritchard, and Kripp retaliated

against Plaintiff in violation of the Equal Protection Clause of the Fourteenth

Amendment, as enforced through 42 U.S.C. § 1983.

133.       Plaintiff engaged in protected activity in July 2020 when she complained to

Steinmetz regarding his discriminatory comments and when she rejected Steinmetz's

opposition to hiring a supremely qualified female candidate and hired her despite

Steinmetz's objection; in July 2020 when she complained to Pritchard regarding

discrimination by Steinmetz; in June 2021 when she opposed sex discrimination and

retaliation by CSCU and Steinmetz against herself and other women and complained

about CSCU's institutional failure to properly respond to complaints of sexism by

Steinmetz; in July 2021 when she provided additional information regarding

discrimination and retaliation against herself and other women; in August 2021 when she

engaged in further opposition to acts of discrimination and retaliation by CSCU; in

August 2021 when Plaintiff filed her complaint in U.S. District Court; in September 2021

when Plaintiff filed her motion for preliminary injunction; and in her opposition to

discrimination and retaliation in September, October, November, and December 2021.

134.       Defendants Steinmetz, Pritchard, and Kripp had knowledge of Plaintiff's

protected activity.

135.       Defendants Steinmetz, Pritchard, and Kripp subjected Plaintiff to numerous

adverse actions because of her protected activity, including, but not limited to, repeatedly

attempting to remove her from her position as Campus CEO without cause, and

suspending Plaintiff from her position as Campus CEO without cause.  Steinmetz also

personally published harmful communications to others regarding Plaintiff's absence from the office; a communication which was almost certainly discussed with Pritchard and Kripp in advance of its publication. Steinmetz, Pritchard, and Kripp, also conditioned Plaintiff's continued employment on Plaintiff accepting the terms of Defendants' proposed stipulated agreement that included unlawful restrictions and a release of claims; moved to terminate Plaintiff's employment for cause for the first time after Plaintiff filed her federal court lawsuit and after CSCU became aware that Plaintiff filed a charge of discrimination with CHRO and EEOC; and terminated Plaintiff's employment.

136.     There is a causal connection between Plaintiff's protected activity and Defendants' retaliatory adverse action against her.

137.     Defendants' actions caused Plaintiff to suffer economic and non-economic damages.

138.     Defendants acted with reckless disregard for Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

139.     Plaintiff has incurred, and will continue to incur, attorney's fees and costs in pursuing this action.

**COUNT FIVE:          RETALIATION IN VIOLATION OF FIRST AMENDMENT**

140.      Based on the foregoing, Defendants Steinmetz, Pritchard, and Kripp retaliated against Plaintiff in violation of the Fourteenth and First Amendments, as enforced through 42 U.S.C. § 1983.

141.     Plaintiff engaged in speech as a citizen regarding matters of public concern.

142.     Plaintiff engaged in protected activity in July 2020 when she complained to Steinmetz regarding his discriminatory comments and when she rejected Steinmetz's

opposition to hiring a supremely qualified female candidate and hired her despite Steinmetz's objection; in July 2020 when she complained to Pritchard regarding discrimination by Steinmetz; in June 2021 when she opposed sex discrimination and retaliation by CSCU and Steinmetz against herself and other women and complained about CSCU's institutional failure to properly respond to complaints of sexism by Steinmetz; in July 2021 when she provided additional information regarding discrimination and retaliation against herself and other women; in August 2021 when she engaged in further opposition to acts of discrimination and retaliation by CSCU; in August 2021 when Plaintiff filed her complaint in U.S. District Court; in September 2021 when Plaintiff filed her motion for preliminary injunction; and in her opposition to discrimination and retaliation in September, October, November, and December 2021.

143.     Plaintiff has not only complained about discrimination and retaliation against herself.  Rather, Plaintiff has complained about a pattern and practice of discrimination and retaliation against other women at CSCU in addition to herself, and also complained about CSCU's failure to prohibit discrimination and retaliation, and its failure to protect women from discrimination and retaliation.

144.     A pattern and practice of discrimination and retaliation by senior public officials at a large state agency responsible for overseeing 17 colleges and universities in Connecticut, and that agency's systemic failure to protect women from discrimination and retaliation, is a matter of significant public concern.

145.     Defendants Steinmetz, Pritchard, and Kripp had knowledge of Plaintiff's protected activity.

146.    Defendants Steinmetz, Pritchard, and Kripp subjected Plaintiff to numerous adverse actions because of her protected activity, including, but not limited to, repeatedly attempting to remove her from her position as Campus CEO without cause, and suspending Plaintiff from her position as Campus CEO without cause.  Steinmetz also personally published harmful communications to others regarding Plaintiff's absence from the office; a communication which was almost certainly discussed with Pritchard and Kripp in advance of its publication. Steinmetz, Pritchard, and Kripp, also conditioned Plaintiff's continued employment on Plaintiff accepting the terms of Defendants' proposed stipulated agreement that included unlawful restrictions and a release of claims; moved to terminate Plaintiff's employment for cause for the first time after Plaintiff filed her federal court lawsuit and after CSCU became aware that Plaintiff filed a charge of discrimination with CHRO and EEOC; and terminated Plaintiff's employment.

147.    There is a causal connection between Plaintiff's protected activity and Defendants' retaliatory adverse action against her.

148.    Defendants' actions caused Plaintiff to suffer economic and non-economic damages.

149.    Defendants acted with reckless disregard for Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

150.    Plaintiff has incurred, and will continue to incur, attorney's fees and costs in pursuing this action.

**COUNT SIX:     DISCRIMINATION IN VIOLATION OF TITLE VII**

151.    Based on the foregoing, Defendant CSCU discriminated against Plaintiff because of sex in violation of Title VII of the Civil Rights Act of 1964.

152.     Defendant CSCU subjected Plaintiff to numerous discriminatory acts in violation of Title VII, including, but not limited to, repeatedly attempting to remove her from her position as Campus CEO without cause, suspending Plaintiff from her position as Campus CEO without cause, sending harmful communications to others regarding Plaintiff's absence from the office, conditioning Plaintiff's continued employment on Plaintiff accepting the terms of Defendants' proposed stipulated agreement that included unlawful restrictions and a release of claims; moving to terminate Plaintiff's employment for cause for the first time after Plaintiff filed her federal court lawsuit and after CSCU became aware that Plaintiff filed a charge of discrimination with CHRO and EEOC; and terminating Plaintiff's employment.

153.     Defendant CSCU's actions caused Plaintiff to suffer economic and non-economic damages.

154.     Plaintiff has incurred, and will continue to incur, attorney's fees and costs in pursuing this action.

155.     CSCU acted with reckless disregard for Plaintiff's rights.

156.     Plaintiff has exhausted her administrative remedies with respect to this claim under Title VII.  On August 3, 2021, Plaintiff filed a charge of discrimination with CHRO, which was dually-filed with the EEOC, which included allegations of sex discrimination and retaliation in violation of Title VII.  Said charge was designated as CHRO No. 2210068 and EEOC No. 16A-2021-01376.  On December 16, 2021, Plaintiff submitted an additional filing to CHRO in connection with that claim which alleged a number of additional acts of discrimination and retaliation by CSCU between August and December 2021, including the termination of Plaintiff's employment.  On February 1,

2022, Plaintiff received a notice of right to sue with respect to her claim under Title VII.
Plaintiff is incorporating her Title VII claim into this lawsuit less than 90 days after she
received her right to sue.

**COUNT SEVEN:          RETALIATION IN VIOLATION OF TITLE VII**

157.        Based on the foregoing, Defendant CSCU retaliated against Plaintiff in violation
of Title VII.

158.        Plaintiff engaged in protected activity in July 2020 when she complained to
Steinmetz regarding his discriminatory comments and when she rejected Steinmetz's
opposition to hiring a supremely qualified female candidate and hired her despite
Steinmetz's objection; in July 2020 when she complained to Pritchard regarding
discrimination by Steinmetz; in June 2021 when she opposed sex discrimination and
retaliation by CSCU and Steinmetz against herself and other women and complained
about CSCU's institutional failure to properly respond to complaints of sexism by
Steinmetz; in July 2021 when she provided additional information regarding
discrimination and retaliation against herself and other women; in August 2021 when she
engaged in further opposition to acts of discrimination and retaliation by CSCU; in
August 2021 when Plaintiff filed her complaint in U.S. District Court; in September 2021
when Plaintiff filed her motion for preliminary injunction; and in her opposition to
discrimination and retaliation in September, October, November, and December 2021.

159.        Defendant CSCU had knowledge of Plaintiff's protected activity.

160.        Defendant CSCU subjected Plaintiff to numerous adverse actions because of her
protected activity, including, but not limited to, repeatedly attempting to remove her from
her position as Campus CEO without cause, suspending Plaintiff from her position as

Campus CEO without cause, sending harmful communications to others regarding Plaintiff's absence from the office, conditioning Plaintiff's continued employment on Plaintiff accepting the terms of Defendants' proposed stipulated agreement that included unlawful restrictions and a release of claims; moving to terminate Plaintiff's employment for cause for the first time after Plaintiff filed her federal court lawsuit and after CSCU became aware that Plaintiff filed a charge of discrimination with CHRO and EEOC; and terminating Plaintiff's employment.

161.     There is a causal connection between Plaintiff's protected activity and Defendant CSCU's retaliatory adverse action against her.

162.     Defendant CSCU's actions caused Plaintiff to suffer economic and non-economic damages.

163.     Plaintiff has incurred, and will continue to incur, attorney's fees and costs in pursuing this action.

164.     CSCU acted with reckless disregard for Plaintiff's rights.

165.     Plaintiff has exhausted her administrative remedies with respect to this claim under Title VII.  On August 3, 2021, Plaintiff filed a charge of discrimination with CHRO, which was dually-filed with the EEOC, which included allegations of sex discrimination and retaliation in violation of Title VII.  Said charge was designated as CHRO No. 2210068 and EEOC No. 16A-2021-01376.  On December 16, 2021, Plaintiff submitted an additional filing to CHRO in connection with that claim which alleged a number of additional acts of discrimination and retaliation by CSCU between August and December 2021, including the termination of Plaintiff's employment.  On February 1, 2022, Plaintiff received a notice of right to sue with respect to her claim under Title VII.

Plaintiff is incorporating her Title VII claim into this lawsuit less than 90 days after she received her right to sue.

**DEMAND FOR RELIEF**

Plaintiff hereby demands Judgment against Defendants, a Trial by Jury, and other relief, including, but not limited to the following:

      1.    Compensatory and economic damages, including, but not limited to, emotional distress, harm to reputation, and loss of enjoyment of life's activities.

      2.    Back Pay;

      3.    Reinstatement and/or Front Pay;

      4.    Attorney's fees and costs.

      5.    Statutory and common law punitive damages.

      6.    Interest.

      7.    Equitable Relief, and Prospective Injunctive Relief, including, but not limited to, an Order requiring that: (a) Defendants immediately reinstate Plaintiff to her position as Campus CEO and issue a corrective publication to the entire MCC community; (b) Defendants expunge any negative documents from Plaintiff's personnel file; (c) prohibiting Defendants from any further acts of discrimination or retaliation against Plaintiff; (d) Defendant CSCU adopt new and more effective measures intended to protect all women in the CSCU community from discrimination and retaliation, and ensure real accountability for supervisors and employees who violate rules prohibiting discrimination and retaliation; and (e) appointing an independent monitor to ensure Defendants' compliance with the Court's Order.

      8.    Other relief that in law or equity may pertain.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

PLAINTIFF,
NICOLE ESPOSITO

By:____/s/Todd Steigman_____
Todd Steigman (ct26875)
William G. Madsen (ct09853)
Jacques J. Parenteau (ct09771)
Madsen, Prestley & Parenteau, LLC
402 Asylum Street
Hartford, CT 06103
Tel: (860) 246-2466
Fax: (860) 246-1794
tsteigman@mppjustice.com
wmadsen@mppjustice.com
jparenteau@mppjustice.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 22, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

___s/_____
Todd Steigman