# EXHIBIT 9

**4.8**   HR Policies for Management/Conf/Professional Personnel     Most recent revision 10/20/20
**BOR Approved: May 16, 2013**
Previous revisions:
2/6/20; via BR 20-14
9/19/19; via BR 19-096
6/20/19; via BR 19-082
12/13/18 via BR 18-154
9/17/15 via BR 15-090
8/21/14 via BR 14-082

# CONNECTICUT STATE COLLEGES AND UNIVERSITIES (CSCU)

# HUMAN RESOURCES POLICIES

# FOR

# MANAGEMENT & CONFIDENTIAL

# PROFESSIONAL PERSONNEL



**Human Resources Office**
**61 Woodland Street**
**Hartford, CT 06105**

**(860) 723-0625**

**CSCU Human Resources Policies for M/C Professional Personnel**                    Page 1

# TABLE OF CONTENTS

ARTICLE 1 – PURPOSE AND DISCLAIMER ......................................................................... 4
1.1      Purpose ................................................................................................................ 4
1.2      Disclaimer ............................................................................................................ 4
1.3      Interpretation, Application and Modification of Human Resources Policies ................... 4

ARTICLE 2 – DEFINITIONS ................................................................................................ 4
2.1      Professional Personnel........................................................................................ 4
2.2      State Universities ................................................................................................ 5
2.3      Community Colleges............................................................................................ 5
2.4      Charter Oak......................................................................................................... 5
2.5      Institution ........................................................................................................... 5
2.6      College & University Personnel .......................................................................... 5
2.7      President ............................................................................................................. 5
2.8      System Office...................................................................................................... 6
2.9      The System .......................................................................................................... 6
2.10     Management and Confidential Professional Employees................................... 6
2.11     Full-Time/Part-Time ........................................................................................... 6
2.12     Non-temporary Employee/Appointment........................................................... 6
2.13     Temporary Employee/Appointment................................................................... 6
2.14     Employer ............................................................................................................. 6

ARTICLE 3 – PROFESSIONAL RESPONSIBILITIES ............................................................ 7
3.1      Non-discrimination, Affirmative Action & Sexual Harassment ........................ 7
3.2      President of the Connecticut State Colleges & Universities (CSCU)................... 7
3.3      Presidents/Campus CEOs of the Institutions.................................................... 8
3.4      The Management and Confidential Professional Staff of the System Office.................... 8
3.5      The Management and Confidential Professional Staff of the Constituent Units............. 8
3.6      Special Responsibility of Presidents/Campus CEOs and the President of the Board of
         Regents............................................................................................................... 9
3.7      Reporting Attendance........................................................................................ 9
3.8      Address and Telephone Number ....................................................................... 9
3.9      Code of Ethics ..................................................................................................... 9
3.9.1    Financial Disclosure ........................................................................................... 9
3.9.2    Questions about the Ethics Code....................................................................... 10
3.9.3    Political Activity and Employment..................................................................... 10

ARTICLE 4 – PROFESSIONAL DEVELOPMENT ................................................................ 11
4.1      Professional Development .................................................................................. 11
4.2      Travel.................................................................................................................. 11
4.3      Presidential Business Related Expenses and Accommodation Accounts........................ 11

**CSCU Human Resources Policies for M/C Professional Personnel**       Page 2

**ARTICLE 5 – APPOINTMENTS** ................................................................................................... 12
5.1       President of the Connecticut State Colleges and Universities (CSCU) ........................... 12
5.2       University Presidents ...................................................................................................... 12
5.3       College Presidents/Campus CEOs .................................................................................. 12
5.4       Management and Confidential Professional Employees Assigned to the System Office . 12
5.5       Institution Management and Confidential Professional Employees ................................ 12
5.6       Faculty Appointed as Management or Confidential Professional Employees.................. 12
5.7       Acting or Interim Appointments ..................................................................................... 12
5.8       Temporary Appointment to Management or Confidential Professional Position from a
          Bargaining Unit .............................................................................................................. 13
5.9       Consultants and Temporary Workers.............................................................................. 13
5.10      Faculty and Administrative Bargaining Unit Ranks ......................................................... 13
5.11      Emeritus Status .............................................................................................................. 13

**ARTICLE 6 – EVALUATION, PERSONNEL FILES, COMPENSATION AND  BENEFITS**............................... 14
6.1       Evaluation of the President of the Board of Regents ...................................................... 14
6.2       Evaluation of the College and University Presidents/Campus CEOs ............................... 14
6.3       Evaluation of Management and Confidential Professional Employees............................ 14
6.4       Personnel Files ............................................................................................................... 14
6.5       Salary Ranges ................................................................................................................. 15
6.6       ARP Disability Plan ......................................................................................................... 15
6.7       Group Life Insurance ...................................................................................................... 15
6.8       Overpayment Recovery .................................................................................................. 16
6.9       Course Privileges............................................................................................................ 16
          System Office ................................................................................................................. 16
          Community Colleges and State Universities ................................................................... 16
          Charter Oak..................................................................................................................... 17
6.10      Moving Expenses ............................................................................................................ 17
6.11      Consulting ...................................................................................................................... 17
6.12      Teaching ......................................................................................................................... 17

**ARTICLE 7 – VACATIONS, HOLIDAYS, COMPENSATORY TIME OFF AND  LEAVES OF ABSENCE**.......... 18
7.1       Vacation.......................................................................................................................... 18
7.2       Personal Leave ............................................................................................................... 18
7.3       Sick Leave....................................................................................................................... 19
7.4       Purposes of Sick Leave, Medical Certificate................................................................... 19
7.5       Sick Leave Bank .............................................................................................................. 20
7.6       Holidays ......................................................................................................................... 21
7.7       Inclement Weather ........................................................................................................ 22
7.8       Compensatory Time ....................................................................................................... 22
7.9       Sabbatical Leave ............................................................................................................ 22
7.10      Leaves Without Pay ........................................................................................................ 24
7.11      Short-Term Military Leave............................................................................................... 24

**CSCU Human Resources Policies for M/C Professional Personnel**                    Page 3

| 7.12 | Court Leave | 24 |
|---|---|---|

**ARTICLE 7 – continued**

| 7.13 | Leave With Pay | 24 |
|---|---|---|
| 7.14 | Family and Medical Leave | 24 |
| 7.15 | Return to System Employment | 25 |
| 7.16 | Leave Privileges for Transferred Employees | 25 |
| 7.17 | Separation Because of Incapacity | 25 |

**ARTICLE 8 – NON-CONTINUATION, DISCIPLINE, REPRIMAND, SUSPENSION AND TERMINATION** ... 26

| 8.1 | Non-continuation | 26 |
|---|---|---|
| 8.2 | Discipline for Cause | 26 |
| 8.3 | Reprimand | 26 |
| 8.4 | Suspension | 26 |
| 8.5 | Appeals of Discipline (not applicable to those non-continued based on 8.1) | 27 |
| 8.6 | Abandonment | 27 |
| 8.7 | Layoff | 27 |

**APPENDICES** ... 28

| A. | MC Salary Range Plans effective 7/1/20 | 28 |
|---|---|---|

## ARTICLE 1 – PURPOSE AND DISCLAIMER

### 1.1    Purpose

These policies are promulgated by the Board of Regents for Higher Education (the Board) established under Connecticut General Statute section 10a-1a and set forth the terms and conditions of employment for Management and Confidential Employees under the Board of Regent's jurisdiction. These policies supersede and cancel all prior practices and agreements, whether written or oral unless expressly stated to the contrary herein.

### 1.2    Disclaimer

Nothing contained herein shall constitute a contract of employment and the Board reserves the right to alter, amend, revise or repeal these policies from time to time in whole or in part. Nothing contained in these policies constitutes a promise or guarantee of continuing employment or of benefits or policies described herein will not be modified in the future. This booklet simply describes current benefits and policies, subject to change from time to time.

### 1.3    Interpretation, Application and Modification of Human Resources Policies

Disputes concerning the meaning of these policies shall be reduced to writing and submitted to the Board's Vice President for Human Resources. He/she will convene a meeting to hear the dispute and give the parties an opportunity to present information and respond to questions. The Vice President for Human Resources will make a written recommendation on the disposition of the complaint to the President of the Board within thirty (30) calendar days of receipt of the dispute. The President of the Board shall either accept or reject the written recommendation. If he/she rejects the written recommendation then the issue is remanded back to the Vice President for Human Resources for further review and he/she must submit a different written recommendation within thirty (30) calendar days.

If the President accepts the written recommendation from the Vice President for Human Resources it shall be final and binding. Said recommendation shall be forwarded by regular mail to the Complainant.

Periodically, these policies are revised or modified. Employees may make suggestions for alterations to these policies to their respective Human Resources Director.

## ARTICLE 2 – DEFINITIONS

### 2.1    Professional Personnel

The term "professional personnel" includes all unclassified personnel, excluding those who are covered by a collective bargaining agreement. These employees, or personnel, are referred to as Management or Confidential Professional Personnel.

Case 3:21-cv-01149-SRU   Document 64-11   Filed 03/10/22   Page 8 of 54

## 2.2    State Universities

The words "state universities" refer to the Connecticut State Universities described under Connecticut General Statutes 10a-1(2) and include Central Connecticut State University, Eastern Connecticut State University, Southern Connecticut State University, Western Connecticut State University and the Connecticut State University Research Foundation.

## 2.3    Community Colleges

The words "community colleges" refer to the regional community-technical colleges described under Connecticut General Statutes 10a-1(3) and include Asnuntuck Community College, Capital Community College, Gateway Community College, Housatonic Community College, Manchester Community College, Middlesex Community College, Naugatuck Valley Community College, Northwestern Connecticut Community College, Norwalk Community College, Quinebaug Valley Community College, Three Rivers Community College and Tunxis Community College.

## 2.4    Charter Oak

The words Charter Oak refer to Charter Oak State College established under Connecticut General Statutes 10a-143(c) and the Connecticut Distance Learning Consortium.

## 2.5    Institution

Institution refers to the community colleges, state universities and Charter Oak.

## 2.6    College & University Personnel

The term "college & university" personnel exclude personnel in the System Office and refers to persons assigned to the CSCU, CSU, CCC or Charter Oak.

## 2.7    President

The term "President" refers to the president for the Connecticut State Colleges and Universities (CSCU) or any of the presidents/Campus CEOs assigned to the State Universities, Community Colleges, or Charter Oak.

## CSCU Human Resources Policies for M/C Professional Personnel

### 2.8    System Office

The term "System Office" means the organizational unit comprising the staff of the Connecticut State Colleges and Universities (CSCU) and employed by the CSCU President under Connecticut General Statutes 10a-1b(b).

### 2.9    The System

The system refers to the System Office along with all of the institutions.

### 2.10    Management and Confidential Professional Employees

The term "Management and Confidential Professional Employees" includes the Presidents/Campus CEOs, Vice Presidents, Chief Officers, Executive Deans, Associate and Assistant Vice Presidents, Provosts, Deans, President's Executive Assistant, Directors and Assistant Directors of Human Resources and such other persons as may be designated by the President of the Board of Regents or a President/Campus CEO of an institution.

The term "Confidential Professional Employee" includes those employees under these policies not designated as management.

### 2.11    Full-Time/Part-Time

As used herein "full-time" means a position or an employee in said position whose regularly assigned hours of work are at least 40 hours per week. "Part-time" employees or positions are those that are less than full-time.

### 2.12    Non-temporary Employee/Appointment

A non-temporary is any individual whose appointment is without term and may be terminated pursuant to Article 8.

### 2.13    Temporary Employee/Appointment

A temporary employee is any individual whose appointment is limited in duration, grant-funded, or whose letter of appointment indicates that employment ends on a specified date. A temporary appointment may also be terminated pursuant to Article 8.

### 2.14    Employer

As used herein the employer shall mean the Board, the Presidents/Campus CEOs or their designee as appropriate.

### ARTICLE 3 – PROFESSIONAL RESPONSIBILITIES

#### 3.1    Non-discrimination, Affirmative Action & Sexual Harassment

It is the legal, intellectual and moral responsibility, but more importantly, the policy of the leadership of the Board of Regents to advance social justice and equity by exercising affirmative action to remove all discriminatory barriers to equal employment opportunity and upward mobility. Accordingly, the System will, with conviction and effort, undertake positively to overcome the present effects of past practices, policies or barriers to equal employment opportunity, and to achieve the full and fair participation of all protected groups found to be underutilized in the workforce or adversely impacted by system policies and practices.

Similarly, it is the policy of the System that sexual harassment is prohibited. This policy is a strong statement of our institutional commitment to have a community in which individuals can work and learn in an environment which fosters dignity and mutual respect, and it reaffirms the System's commitment to fair and equal treatment for all.

All employees are expected to discharge their affirmative action responsibilities, in word and deed, consistent with the System's objective of establishing and implementing affirmative action and equal employment opportunity.

Complaints alleging discrimination and sexual harassment will be investigated according to the complaint procedures adopted at each of the constituent units or at the system office. Complaints must be filed with the individual responsible for affirmative action at the appropriate location and in accordance with the procedures located in the respective affirmative action plan.

#### 3.2    President of the Connecticut State Colleges & Universities (CSCU)

The position President of the Connecticut State Colleges & Universities (CSCU) is established under Connecticut General Statute's 10a-1b and is the chief executive officer for the Connecticut State Colleges and Universities (CSCU). The President of CSCU has the authority to implement the policies, directives and rules of the Board and any additional responsibilities as the Board may prescribe. The President of CSCU is responsible for the operation of the System and supervises the work of the staff in the System Office. The work of the System Office includes, but is not limited to: academic affairs, student affairs, budgeting, financial management, legal services, communications, public policy, human resources (including affirmative action and collective bargaining), institutional research, telecommunications, facilities planning and construction, innovation and outreach, and information technology.

The President of CSCU shall keep the Board fully informed on all aspects of the System. He or she prepares the agenda for Board meetings, provides adequate notice of meetings as required by state statute and Board policy, and maintains records of the Board's actions. The President of CSCU or his/her designee acts for the Board and represents the Board and the institutions to other units of state government and to the community and citizens at large.

In the absence of a Board policy, the CSCU President determines appropriate action and need for policy. The CSCU President or his/her designee is empowered to issue administrative directives and to call for reports as may be needed. The CSCU President may direct transfers of funds among the System (in accordance with state appropriation rules and regulations), whenever such transfers in the CSCU President's judgment provide the best management and operation of the System.

The Presidents/Campus CEOs of the constituent units report to the CSCU President and are responsible for the effective management of their institutions.

The CSCU President or his/her designee may define categories of students to insure appropriate designation for purposes of fee payment and uniform enrollment reporting.

When applicable, the CSCU President or his/her designee may establish and/or manage compensation classification systems for employees whenever he/she determines said classifications provide for the best management and operation of the System and are in accordance with collective bargaining policies and procedures.

This section should not be construed to limit other duties and responsibilities of the CSCU President described in section 10a-1b of the Connecticut General Statutes.

### 3.3     Presidents/Campus CEOs of the Institutions

Each President/Campus CEO of an institution is the Chief Executive Officer of the college or university to which he/she has appointed by the Board of Regents, and report to the CSCU President. In the capacity of Chief Executive Officer, the Presidents/Campus CEOs are responsible for meeting stated missions, serving as the executive management of the college/university, and promoting the development and effectiveness within approved Board policy. In addition, the Presidents/Campus CEOs are responsible for the welfare of all students and employees at their college/university.

### 3.4     The Management and Confidential Professional Staff of the System Office

The professional staff of the System Office shall be the CSCU President and the Management and Confidential Professional staff to the President of the Board of Regents. The duties and responsibilities of the President of the Board of Regents shall be as assigned by the Board. The duties and responsibilities of professional staff shall be assigned by the President of the Board of Regents or his/her designee.

### 3.5     The Management and Confidential Professional Staff of the Constituent Units

Each institution shall have a President/Campus CEO and such other Management or Confidential Professional employees as are required by that institution's president/Campus CEO. Duties and responsibilities of the institution's President/Campus CEO shall be assigned by the President of the Board of Regents and/or by the Board, except that such duties assigned by the President of the Board of Regents shall not negate duties and responsibilities assigned by the Board. Duties and responsibilities borne by institution Management and Confidential Professional employees shall be as assigned by the institution's President/Campus CEO or his/her designee in conformance with the compensation classification established by the President of the Board of Regents.

### 3.6　　Special Responsibility of Presidents/Campus CEOs and the President of the Board of Regents

The management and operation of the System depend on the leadership and oversight exercised by the Presidents/Campus CEOs. When the CSCU President is to be absent from the office and inaccessible for a period of more than a day, except for an absence which occurs because of a state holiday, then he or she shall inform the Board Chairman of the planned absence, as well as who has been assigned the responsibility for the management of the System Office. When an institution's President/Campus CEO is to be absent from the office and inaccessible for a period of more than a day, except for an absence which occurs because of a state holiday, then he or she shall inform the CSCU President, as well as who has been assigned the responsibility for the management of the college or university.

### 3.7　　Reporting Attendance

Management and Confidential Professional employees are required to report their work attendance in the manner as prescribed by the CSCU President or his/her designee or by the appropriate president/Campus CEO or his/her designee, as appropriate.

### 3.8　　Address and Telephone Number

Management and Confidential Professional employees have specialized skills and knowledge essential to the operation of the System. For this reason it is essential to be able to contact such persons in case of emergencies or other unusual circumstances.

All Management and Confidential Professional employees shall file home addresses, telephone numbers (including cell phone numbers) and emergency contact information with their respective President/Campus CEO, as appropriate. Whenever an address or a telephone number is changed, the new address or telephone number must be reported immediately to the employee's President/Campus CEO (or designee).

### 3.9　　Code of Ethics

All state officials and employees, including all Management and Confidential Professional employees of the System, must comply with the State Code of Ethics. The Code is intended to prevent one from using his/her position or authority for personal financial benefit.

### 3.9.1　　Financial Disclosure

Certain public servants (all personnel who exercise policy-making, regulatory or contractual authority) in the Legislative and Executive Branches of State Government and the State's Quasi- Public agencies must file statements of financial interest (interests held during the previous year) annually with the Office of Governmental Accountability by May 1.

Additionally, any "necessary expense" payments received in the capacity of a state employee if lodging and/or out-of-state travel is included, unless provided by the Federal Government or another state government must be disclosed to the Office of Governmental Accountability (Office of State Ethics) within thirty (30) days of the trip.

### 3.9.2   Questions about the Ethics Code

Anyone subject to the Code may request the Office of State Ethics advice (advisory opinion) as to how the Code applies to a situation. The Office's staff also provides informal advisory letters when the question posed is unambiguous or has been previously addressed by a previous opinion. Finally, staff are available to discuss application of the Code to a particular issue on a confidential basis.

Questions about the above information or requests for more information about the Ethics Law or Code of Ethics, may be addressed to:

> Office of State Ethics
> 18-20 Trinity Street
> Hartford, CT 06106-1660
> Main Phone Number: 860-263-2400
> The full guide for Public Officials & State Employees may be viewed at: http://www.ct.gov/ethics

### 3.9.3   Political Activity and Employment

Political activity of state employees is governed by the Federal Hatch Act and Connecticut General Statutes. To avoid conflicts with the law, employees who are considering running for public office must notify their human resources office prior to initiating a campaign to determine if the state or federal laws apply and to determine whether an accommodation will be needed or possible.

### ARTICLE 4 – PROFESSIONAL DEVELOPMENT

#### 4.1    Professional Development

The Board recognizes that professionals must have the opportunity to keep abreast of developments in their fields, to sharpen their skills and to increase their knowledge. The various types of leaves are provided in Article 6.

Employees may be granted reimbursement for course work, seminars and conferences, provided this request is made and approved by the President of the Board of Regents or his/her designee in advance of the scheduling anticipated participation and that participation in the seminar, conference or other skill development training, increases an employee's value to the Board by improving professional skills.

#### 4.2    Travel

Travel is an important ingredient in the development of professional skills. The Board requires the President of the Board of Regents to set reimbursement standards and rates for Management and Confidential Professional Employees that shall be consistent with state travel policy and shall not be less than the most favorable granted to any employee of the Board of Regents who is covered under a prevailing collective bargaining agreement.

#### 4.3    Presidential Business Related Expenses and Accommodation Accounts

Upon the submission of satisfactory documentation in accordance with a process proscribed by the President of the Board of Regents or the President's designee, Community College Presidents and the President of Charter Oak State College shall be eligible for reimbursement of up to $12,205 in business-related expenses incurred in the performance of their duties in each fiscal year. For the purposes of this policy, the term "business-related expenses" shall specifically include auto expenses, any premiums paid to purchase optional employee benefits including, but not limited to, long-term care insurance, supplemental life insurance and short-term and long-term disability insurance. Business-related so reimbursed shall be paid from the budget of each campus. Such expenses shall not be considered as ordinary income and, therefore, will be excluded from each President's taxable income in accordance with relevant federal and state tax regulations.

University Presidents shall be provided accommodation allowances in lieu of campus housing. In each fiscal year, this Allowance is intended to fund the cost of gatherings and meetings that further each University's mission, as well as for community outreach, building donor support, continuing connections with alumni, and similar matters. This Allowance shall continue to be paid from the budget of each campus and reported as ordinary income to each University President in accordance with relevant federal and state tax regulations.

## ARTICLE 5 – APPOINTMENTS

### 5.1    President of the Connecticut State Colleges and Universities (CSCU)

The President of the Connecticut State Colleges and Universities (CSCU) is appointed by the Board of Regents and shall serve at the pleasure of the Board. Temporary appointments as defined in Section 2.13, end on the date specified. Non-temporary appointments may be terminated by the Board pursuant to Article 8.

### 5.2    University Presidents

University Presidents are appointed by the Board. Temporary appointments, as defined in Section 2.13, end on the date specified. Non-temporary appointments are without term and may be terminated by the Board pursuant to Article 8.

### 5.3    College Presidents/Campus CEOs

College Presidents/Campus CEOs are appointed by the Board. Temporary appointments, as defined in Section 2.13, end on the date specified. Non-temporary appointments are for a term of one year or less and expire June 30 of each year. Non-temporary appointments are subject to annual renewal.

### 5.4    Management and Confidential Professional Employees Assigned to the System Office

Management and Confidential Professional Employees in the System Office are appointed by the President of the Connecticut State Colleges and Universities (CSCU). Temporary appointments, as defined in Section 2.13, end on the date specified. Non-temporary appointments may be terminated pursuant to Article 8.

### 5.5    Institution Management and Confidential Professional Employees

Institution Management and Confidential Professional Employees are appointed by the President/Campus CEO of the College or University. Temporary appointments, as defined in Section 2.13, end on the date specified. Non-temporary appointments may be terminated pursuant to Article 8.

### 5.6    Faculty Appointed as Management or Confidential Professional Employees

When Faculty or ten-month employees are appointed to a Management or Confidential Professional Employee position at a time other than the beginning of the academic year, they shall be paid a lump sum for any prior service completed.

### 5.7    Acting or Interim Appointments

When a Management or Confidential Professional position becomes vacant because of resignation, retirement, illness, sabbatical leave or any other cause the respective President/Campus CEO may appoint a qualified individual to fill the position on an Acting or Interim basis. A person who is an employee of the Board and who accepts an acting, or interim, appointment may receive a non-

## CSCU Human Resources Policies for M/C Professional Personnel

temporary appointment to the position in which such a person is serving in an acting capacity, provided such non-temporary appointment is made accordance with existing Board and human resource policies, as well as all affirmative action rules and procedures governing the CSCU System.

Accepting an acting or interim appointment does not impact the employee's non-temporary appointment.

### 5.8    Temporary Appointment to Management or Confidential Professional Position from a Bargaining Unit

When a member of a bargaining unit is temporarily appointed to a Management or Confidential Professional position, his/ her salary shall be expressed as what he/she would receive had they remained in their bargaining unit position plus any additional biweekly amount received for the period served in the Management or Confidential position in conformance with the Compensation and Classification Policy. Faculty, however who do enter into a temporary Management or Confidential Professional position will receive vacation and sick time accruals until the end of the appointment. At the end of the appointment, the vacation time will be paid out to the Faculty employee should he/she have any remaining balance.

### 5.9    Consultants and Temporary Workers

The Presidents/Campus CEOs are authorized to employ consultants and other temporary workers, provided such employment does not violate an existing collective bargaining agreement or other state regulation and provided the funds are within the budgetary provisions approved by the Board.

### 5.10    Faculty and Administrative Bargaining Unit Ranks

Application of this provision is subject to collective bargaining agreements, as may be amended from time to time. As part of an employment package, a prospective employee may only be offered academic department status following appropriate faculty consultation procedures. Employees shall not seek assignment of faculty rank, promotion from a former faculty rank or assignment to administrative rank, while under the aegis of these policies.

### 5.11    Emeritus Status

When a President/Campus CEO believes it is appropriate, emeritus status may be conferred upon Managers and Confidential Professional employees. Ordinarily, emeritus status will be conferred only upon persons who have ten (10) years or more of service to the Board of Regents (or one of the Board of Regents' colleges or universities), or its predecessor organization who are 55 years of age or older, and who have retired from service to the State of Connecticut. The employee must have distinguished service, accomplishments and length of service which provide evidence of advancing the mission of the Board of Regents. Such recognition shall be deemed to be an honor of the highest order and shall not be conferred as a matter of due course, but rather reserved for those whose service is most exemplary. The following privileges are provided for emeriti: use of the emeriti title, library privileges, and course privileges as provided in Article 6.9, desk space if available, inclusion on the distribution list for all publications issued by the College or University to which the employee was assigned immediately before retirement.

**CSCU Human Resources Policies for M/C Professional Personnel**  Page 14

## ARTICLE 6 –EVALUATION, PERSONNEL FILES, COMPENSATION AND BENEFITS

### 6.1    Evaluation of the President of the Board of Regents

The CSCU President shall be evaluated in conformance with Board policy.

### 6.2    Evaluation of the College and University Presidents/Campus CEOs

The College and University Presidents/Campus CEOs shall be evaluated by the President of the Board of Regents in conformance with Board policy.

### 6.3    Evaluation of Management and Confidential Professional Employees

The President(s) /Campus CEO(s) shall evaluate those employees who report directly to the Office of the President/Campus CEO. Designees of the President(s)/Campus CEO(s) shall evaluate the performance of Management and Confidential Professional employees who report to them. Such evaluations shall take place annually, except that more frequent evaluations may occur at the discretion of the evaluator. Evaluations will be based upon objectives established for the period since the last evaluation and upon the individual's accomplishments and areas for development during that period of time. The evaluation schedule and instrument shall be determined by the President of the Board of Regents.

Each employee shall be shown the original evaluation and shall sign and date such evaluation indicating that the document has been reviewed. Employees may append statements to evaluations within a ten (10) day period following their signature on the evaluation.

### 6.4    Personnel Files

Personnel files shall be maintained in accordance with all applicable laws and regulations. Personnel files shall be located in the Human Resources Office in a secure location. These files shall include, but not be limited to, the application for employment and supporting documentation, recommendations, evaluations, disciplinary actions, payroll and benefits- related forms and correspondence reasonably related to an employee's personal status. These files shall be maintained under the direction of the Human Resources Director.

Each employee file shall contain a log of every instance of access to that file except by the President/Campus CEO, Human Resources Director or the staff charged with Human Resources responsibilities.

Employees shall have access to their personnel file at the mutual convenience of the Human Resources Office staff and the employee. Nothing may be added, removed or altered in a personnel file by the employee except upon the written agreement of the Human Resources Director or his/her designee.

Upon an employee's request, a copy of any document (s) within the file shall be given to the employee within a reasonable period of time.

Employees wishing to contest the accuracy, completeness or relevancy of documents in the personnel file shall submit a request for addition, deletion or correction, in writing to the Human Resources Director. The dated request shall provide detailed reasons for the proposed change. The decision in the matter by the Human Resources Director shall be final, binding and issued within thirty (30) days of the initial written request. Contents of the Chief Human Resources Officer's file may only be changed upon the agreement of the President.

An employee's file may be opened to an outside party pursuant to and in accordance with the Freedom of Information Act and other relevant laws. An affected employee shall be promptly  notified of any such request.

### 6.5    Salary Ranges revised 2/6/20

Each Management and Confidential Professional title is assigned to a salary range[1]. The  assignment of new titles to ranges and the reassignment of existing titles to new ranges shall be  pursuant to the Classification and Compensation Policy.

**A.  Salary Ranges for New Hires**
Salary Ranges are governed by the Classification and Compensation Procedures for Management and Confidential Employees.

**B.  Salary Adjustment Policy**
Salary Adjustments are governed by the Classification and Compensation Procedures for Management and Confidential Employees.

**C.  Salary Adjustments for Management and Confidential Professional Employees**
Salary Adjustments are governed by the Classification and Compensation Procedures for Management and Confidential Employees.

**D.  Reporting Salary Adjustments**
Salary Adjustment reporting requirements are governed by the Classification and Compensation Procedures for Management and Confidential Employees.

### 6.6    ARP Disability Plan

Management and Confidential Professional Employees who are members of the Alternate  Retirement Plan (ARP) shall be covered at no expense by a group disability plan.

### 6.7    Group Life Insurance

Employees shall continue to be eligible to participate in the state's group life insurance plan  pursuant to Connecticut General Statutes.

---

[1] **Appendix A – MC Salary Range Plan effective 7/1/2020**

**CSCU Human Resources Policies for M/C Professional Personnel**          Page 16

### 6.8     Overpayment Recovery

When the System Office or an institution determines that an employee has been overpaid, the human resources office shall give reasonable notice to the employee of the fact and reasons therefore. Overpayments or other unauthorized payments may be involuntarily recovered by payroll deduction. Such biweekly recovery deduction(s) shall not exceed the amount of the overpayment(s). The deduction shall begin promptly provided:

> ➢ The individual employee has not agreed, in the opinion of the Human Resources Director, to an alternative reasonable payment schedule;
> ➢ There is no pending litigation related to the issue; and
> ➢ The recovery rate shall not exceed five (5) percent of the employee's gross biweekly salary.

### 6.9     Course Privileges

**System Office**
Subject to the approval of the College or University offering the instruction, a full-time non-temporary System Office employee hired under these policies or their spouse and unmarried dependents under the age of 25 may take courses at either the Community Colleges or the State Universities on a space available basis without payment of tuition. Upon making an election of either university or college, System Office employees may not change their election.  System Office employees hired prior to the adoption of this policy shall be allowed course privileges in accordance with the policy that was previously in effect for their respective employer.

**Community Colleges and State Universities**
Full-time non-temporary Community College employees or their spouses and unmarried dependents under the age of 25 may take courses at any of the colleges or universities with the exception of Charter Oak State College.

Effective January 1, 2019, full-time non-temporary Community College employees or their spouses and unmarried dependents under the age of 25 may apply the cash value of their community college in-state tuition and fees to universities throughout the CSCU System with the exception of Charter Oak State College. The cash value of a Community College tuition and fee waiver will equate to the total number of registered credit hours. The maximum cash value per semester will equate to a full-time load of twelve (12) or more credit hours. The cash value equivalent for Community College tuition and fee waivers will be adjusted to align with changes in community college in-state tuition and fees.

The cash value of the Community College tuition and fee waiver can be applied to graduate level courses for those Community College employees, their spouses, and dependents who are academically eligible for graduate classes.

Full-time non-temporary State University employees or their spouses and unmarried dependents under the age of 25 may take courses only at any of the state universities.

## CSCU Human Resources Policies for M/C Professional Personnel

If attending a state university the following fees may be waived: State University Fee or General University Fee for full-time students and Extension Fee and Registration Fee for part-time students. If attending a community college the following fees may be waived: application fee, program enrollment fee, college services fee and student activity fee. Course privileges do not include waivers for credit extension course work.

### Charter Oak

Full-time Charter Oak employees may take one free course per calendar year at Charter Oak State College.

The course privileges above may be granted provided that participation in courses does not interfere with the employee's professional obligations. This benefit shall also be available to the above-mentioned spouse and dependents surviving a deceased employee (death having occurred on or after July 1, 1990, during the employee's active service) who had accumulated ten
(10) years of State service.

### 6.10    Moving Expenses

The President(s) /Campus CEO(s) are authorized to offer reimbursement for out-of-state moving expenses for prospective employees when, in their judgment, such offer would be in the best interests of the Board of Regents. Such offers must be in writing and conform to current Board Policy.

### 6.11    Consulting

Management and Confidential Professional employees may be compensated for performance of research, consulting or similar activities which are beyond the scope of their normal duties provided:

- Notification and approval has been granted by the direct supervisor and the Human Resources Director.
- That no conflict of interest results, and that such activities can be accomplished on personal time in such a way as not to conflict with normal duties; and
- That payment is made directly to the employee.

### 6.12    Teaching

Management personnel may teach courses within the Board of Regents so long as the course does not interfere with their normal duties and that compensation for such course is in accordance with collective bargaining rates for the affected institution. Internal or external teaching assignments may be undertaken only with prior approval of the appropriate President/Campus CEO.

## ARTICLE 7 – VACATIONS, HOLIDAYS, COMPENSATORY TIME OFF AND LEAVES OF ABSENCE

### 7.1    Vacation

Vacation days do not accrue in any month in which an employee is on leave of absence without pay for an aggregate of more than five (5) working days during that month. Full- time employees employed on a 10-month basis are entitled to a total of 18.33 working days of vacation per calendar year accrued at the rate of 1.833 days per calendar month of service. Full- time employees employed on a 12-month basis are entitled to a total of 22 vacation days each calendar year accrued at the rate of 1.833 days per calendar month of service.

Part-time employees who work twenty (20) or more hours per week and are eligible for benefits shall receive vacation, sick and personal leave on a pro rata basis. Proration of benefits shall be measured by the length of the part-time employee's work week, divided by the length of the work week for full-time employees.

Employees may accumulate vacation days with pay from year to year to a maximum of 120 such days (960 hours). The Human Resources Office will notify an employee before the maximum limit is reached and for employees who are at the limit will adjust the balance to remove the overage to such employee's record once a year in January or at the time of separation from State service.

Employees are required to use a minimum of twelve (12) days of vacation per calendar year. Forfeiting required vacation leave time to carry over vacation leave time must be approved by the Chief Human Resources Officer.

Upon separation from State service, an employee shall be compensated for unused vacation days (to a maximum 120 days) at the daily rate of pay at the time of separation. In the event of death, the compensation shall be paid to the employee's estate.

### 7.2    Personal Leave

In addition to annual vacation, each full-time employee shall be granted up to three (3) days of personal leave with pay in each calendar year. Such leave shall be for the purpose of carrying out important personal matters, including the observance of religious holidays, and shall not be deducted from vacation or sick leave credits. Except in emergencies, employees who desire to use personal leave are expected to give reasonable advance notification to their immediate supervisors.

If at any time a part-time Management or Confidential Professional employee is changed to full- time status, they shall receive the remainder of the personal leave time give a full-time employee for the year. Any individual commencing employment in the first four months of the calendar year is eligible for three (3) personal days; in the second four months, two (2) days; and in the last four months no days. Personal leave days not taken within the calendar year may not be carried over to the next year.

**CSCU Human Resources Policies for M/C Professional Personnel**                    Page 19

## 7.3    Sick Leave

Full-time employees shall accrue sick leave with pay at the rate of one and one-quarter (1.25) working days per completed calendar month of continuous full-time service commencing with the date of initial employment. No such leave will accrue for any calendar month in which an employee is on leave of absence without pay an aggregate of more than five (5) working days. Part-time employees shall accrue sick leave monthly on a pro-rated basis.

There shall be unlimited accumulation of sick leave. Upon retirement, however, an employee  shall be compensated for one-quarter (.25) of the accumulated sick leave up to a maximum of 60  full days. Payment for accumulated sick leave shall not be included in computing retirement income. Upon the death of an employee who completed ten (10) years of satisfactory state  service, the employee's estate shall receive the sick leave compensation which would have been  provided to the employee had he/she retired on the date of the employee's death.

## 7.4    Purposes of Sick Leave, Medical Certificate

Earned sick leave is granted for the following reasons
- Temporary incapacitation for duty;
- Avoidance of the exposure of others to contagious diseases;
- Dental, medical or eye examination or treatment which cannot be scheduled outside of working hours;
- In the event of death in the immediate family when as much as five (5) working days' leave with pay shall be granted (immediate family means husband, wife, father, mother, sister, brother, child or any other person who is domiciled in the employee's household);
- If critical illness or severe illness or severe injury in the immediate family
- creates an emergency which requires the attendance or aid of the employee, when up to five (5) working days' leave with pay shall be granted;
- In the event of the death of a non-immediate family member or friend the President/Campus CEO may also authorize the use of sick leave not exceed in the aggregate a total of five (5) working days' leave per calendar year, to fulfill the obligations of traveling to, attending and returning from funerals.
- Up to three (3) days paid leave will be provided to a parent at the time of birth, adoption, or taking custody of a child.

Medical certificates are required before sick leave will be granted for the following reasons
- Any period of absence of more than five (5) consecutive working days;
- When absence recurs frequently or habitually (as determined by the Human Resources Director); or to
- Adjust vacation leave to sick leave in the event that employee becomes ill while on vacation. Occasionally, the Human Resources Director may require a second medical certificate from a physician of his/her choosing selected from a list of state-approved medical providers.

## 7.5     Sick Leave Bank

There shall be a Sick Leave Bank established for use by full-time Management and Confidential Professional employees who have been employed at least one year, exhausted their own sick leave and who have a catastrophic and extended illness. Each employee shall make a mandatory contribution of four (4) sick leave days during their first year of service. (For current employees who have not previously made the mandatory contribution, upon adoption of these policies four (4) sick leave days will be taken immediately from their sick leave accruals).

The Sick Leave Bank shall be administered by a Sick Leave Bank Committee whose membership will be made up of volunteers from the Council on Employee Relations and will be chaired by the Vice President of Human Resources for the Board of Regents. The Sick Leave Bank Committee shall determine the eligibility for the use of the Bank and the amount of leave to be granted. The following criteria shall be used by the Committee in administering the Bank and determining the eligibility and amount of leave:

- Adequate medical evidence of catastrophic and extended illness; and
- Prior utilization of all available sick leave, including prior sick leave patterns and usage.

The initial grant of sick leave by the Sick Leave Bank Committee to an eligible employee shall not exceed thirty (30) working days. Upon completion of the 30-workday period, the period of entitlement may be extended by the Sick Leave Bank Committee upon demonstration of need by the applicant. In normal circumstances, such grants from the Sick Leave Bank Committee shall not exceed a total of 120 consecutive workdays per occurrence. If the sick leave bank is exhausted, it shall be replenished by the contribution of up to four (4) additional sick days from each employee covered by these Policies. The Sick Leave Bank Committee shall determine the time when it becomes necessary to replenish the sick leave bank. The decisions of the Sick Leave Bank Committee, with respect to eligibility and entitlement, shall be final and binding with no appeal. When an employee has a catastrophic and extended illness that has exhausted their sick leave, a request for use of the sick leave bank may be made to the Vice President of Human Resources for the Board of Regents or his/her designee.

## 7.6   Holidays

If these holidays fall within their working year, employees shall be granted time off with pay for  the following twelve (12) holidays:

**Community Colleges**

| | |
|---|---|
| New Year's Day | Martin Luther King Day |
| Lincoln's Birthday | Washington's Birthday |
| Good Friday | Memorial Day |
| Independence Day | Labor Day |
| Columbus Day | Veterans Day |
| Thanksgiving Day | Christmas Day |

**State Universities and Charter Oak**

| | |
|---|---|
| New Year's Day | Martin Luther King Day |
| Lincoln's Birthday (observed the Friday preceding Washington's Birthday) | |
| Washington's Birthday | Day of Prayer |
| Memorial Day | Independence Day |
| Labor Day | Columbus Day |
| Veterans Day (observed the Friday after Thanksgiving) | |
| Thanksgiving Day | Christmas Day |

If a College or Universities' classes are in session on a scheduled holiday, a substitute day may  be subsequently taken with the agreement of the President/Campus CEO.

If these holidays fall within their working year, **System Office** employees shall be granted time  off with pay for the following ten (10) holidays:

| | |
|---|---|
| New Year's Day | Martin Luther King Day |
| Washington's Birthday | Day of Prayer |
| Memorial Day | Independence Day |
| Labor Day | Columbus Day |
| Thanksgiving Day | Christmas Day |

System Office employees shall also be granted two  (2) floating holidays. The first  floating  holiday shall be taken on either Lincoln's Birthday or the Friday preceding Washington's Birthday while the second floating holiday shall be taken on either Veterans Day or the Friday  after Thanksgiving.

If any of these holidays fall on a Saturday or Sunday, employees shall be excused from work in accordance with state practice.

### 7.7    Inclement Weather

Whenever the Governor of Connecticut or the Governor's designee excuses state employees from work, the President of the Board of Regents or designee may grant time off to Management and Confidential Professional employees. A President/Campus CEO may also close his/her institution due to inclement weather or emergency if he/she deems that appropriate and excuse management and confidential personnel.

### 7.8    Compensatory Time

The Board recognizes that Management and Confidential Professional positions are demanding and often require work beyond that normally expected of other employees. Compensatory time off will be based upon the individual's FLSA status (below the salary range of Assistant Director, grade 36) as determined by the Human Resources Director.

- Travel-related functions (e.g. conferences, seminars, etc.) do not qualify for compensatory time.
- Personnel who are required to perform extended service beyond the normal workweek to complete a special project, participate at a university function on a weekend (e.g. orientations, graduation, conference, etc.) or meet specific deadlines due to unusually heavy, peak-period workload, may claim compensatory time provided they have written pre- approval from their supervisor and the Human Resources Director.
- In other circumstances, compensatory time for work on a legal holiday, a Saturday or Sunday may be granted at the discretion of the President/Campus CEO or designee as appropriate, provided they have received written pre-approval from the President/Campus CEO or designee.
- Use of compensatory time is subject to supervisory approval which shall not be unreasonably withheld.

Such compensatory time earned must be taken by December 31st of the year earned. Compensatory time will not be used as the basis for additional compensation. Employees may not aggregate more than 15 days (120 hours) of compensatory time. With written approval from the President/Campus CEO or designee an employee may aggregate more than 15 days, but in no case shall the aggregate exceed 20 days (160 hours).

### 7.9    Sabbatical Leave

Sabbaticals are granted to increase an employee's value to the System by improving professional skills and thereby enriching the employer. Sabbatical leaves shall be granted for planned travel, study, formal education, research, writing or other experience of professional value. Such leave shall be available as a matter of privilege rather than a right and shall be granted to an eligible employee only in those cases where the criteria set forth below are met.

Upon completion of six (6) years' full-time service, an employee may be considered for sabbatic leave. After a sabbatical, a person does not again become eligible until the completion of an additional six (6) years' of full-time service. The number of sabbatic leaves available each year is limited and depends upon the availability of funds. Leaves are granted without regard to seniority or to the number of years a person has been eligible for a sabbatical. Proposals for such leaves must be submitted to a President/Campus CEO or the Board, as appropriate. The proposal must include:

**CSCU Human Resources Policies for M/C Professional Personnel**                    Page 23

1. A full description of the activity to be undertaken;
2. A detailed explanation of how this activity will improve professional skills and is mutually beneficial to the institution/Board of Regents and the individual;
3. The time period for which the leave is requested; and
4. A description of the individual's role, his/her prior service to the institution/Board of Regents, and other contributions to the System.

The President/Campus CEO or the Board, as appropriate, will evaluate the request for sabbatic leave based on the following criteria:

1. The merits of the project to the System;
2. The merits of the project to the professional development of the individual;
3. The feasibility of completing the project within the timeframe stated in the proposal; and
4. How the leave would impact the functioning of the unit.

Leaves approved by the President/Campus CEO or the Board shall be reported to the Board.

Payment for employees on sabbatic leave shall be at the rate of full pay for leaves of six (6) months or less or half pay for leaves of more than six (6) months, but not to exceed twelve (12) months. An employee on sabbatical shall continue to accrue sick leave, vacation leave and retirement credit. An employee on a half-pay sabbatical shall be credited with one full- year service (but not salary) for purposes of retirement.

Management or Confidential Professional Personnel on sabbatic leave are permitted to receive additional compensation in the form of fellowships, government grants, and honoraria for purposes related to the leave, and part-time employment directly related to the project at an institution where they are in residence for the purpose of study and research, or other educational purpose, in addition to the partial salary from the constituent unit, provided that the total compensation from all sources does not exceed full salary. The leave may not be used to accept paid employment during the period of the leave except as provided above. Upon completion of the sabbatic leave and within three (3) months of returning from the leave, the employee will submit a written report to the President/Campus CEO or the Board that details the professional activities and accomplishments attained in pursuit of the objectives set forth in the original proposal report (a dissertation may be substituted if completed while on the sabbatic leave). Employees accepting and completing sabbatic leave are expected to return to on-site work for one (1) year following expiration of the leave unless specifically exempted from this provision in writing by the President/Campus CEO or Board.

**CSCU Human Resources Policies for M/C Professional Personnel**

### 7.10    Leaves Without Pay

A President/Campus CEO, as appropriate, may grant an employee an unpaid leave of absence for periods lasting up to one (1) calendar year. Unpaid leaves of absence may be extended for up to no more than one (1) additional year at the discretion of the President/Campus CEO. During an unpaid leave, an employee may exercise the option of continuing all benefits normally provided by the state by paying all the required premiums for such benefits. While on unpaid leave, an individual shall remain an employee of the Board; however, the period of any such leave shall not be considered a period of service for purposes of salary and fringe benefit calculation, retirement, seniority or eligibility for sabbatic leave. Any family or medical leave taken pursuant to Article 7.14 shall count toward the one-year limit.

### 7.11    Short-Term Military Leave

Short-term military leave shall be granted in accordance with state and federal statutes.

### 7.12    Court Leave

An employee who serves on a jury or is subpoenaed to testify to matters which arose out of the course of state employment, shall be entitled to receive full pay and benefits for the duration of such duty in return for relinquishing to the state all fees received for such jury duty.

### 7.13    Leave With Pay

In extraordinary circumstances, the CSCU President, with the approval of the Board, may grant leave with pay for not more than six (6) months if it is in the best interest of the System. Such leave should serve the operational needs of the System and would be granted solely for that purpose. During said leave, the individual on leave will be assigned projects or tasks that the President of the Board of Regents deems beneficial to the System or its institutions. Such leaves may also be granted at the universities and colleges on the recommendation of the President/Campus CEO and with the written approval of the CSCU President and the Board. Leaves approved by the CSCU President shall be reported to the Board of Regents.

### 7.14    Family and Medical Leave

In addition to any other paid benefits or leaves, upon written request and with proper medical documentation, an eligible employee shall be granted:

Federal FMLA: Up to 12 weeks of unpaid leave in a twelve-month period for the birth, care or adoption a child; placement of a child for foster care; care for an immediate family member with a serious health condition; or to take a medical leave when the employee is unable to work due to a serious health condition. Employees may elect or the System may require that the employee utilize their accrued leave for this time. For the purpose of this section, "serious health condition" is defined as an illness, injury, impairment, or physical or mental condition that involves: (1) any period of incapacity or treatment related to in-patient care in a hospital, hospice or residential care facility; or (2) continuing treatment by a health care provider.

## CSCU Human Resources Policies for M/C Professional Personnel

State Family/Medical Leave: Up to 24 weeks of unpaid leave within a two-year period for the birth, care or adoption of a child; care for an immediate family member with a serious illness; or to take a medical leave when the employee is unable to work due to a serious illness. The state entitlement begins after the employee has exhausted their applicable sick leave accruals. The employee is allowed to use their personal leave and vacation accruals, however, this will not extend the 24-week period. Where possible, leave time granted under this provision will run concurrently with the federal FMLA entitlement.

For the purpose of this section, "serious illness" means an illness, injury, impairment, or physical or mental condition that involves: (1) in-patient care in a hospital, hospice or residential care facility; or (2) continuing treatment or continuing supervision by a health care provider.

The federal and state leaves both define an immediate family member as a spouse, child or parent of such employee.

The state shall pay for the continuation of health insurance benefits for the employee during any leave of absence taken pursuant to this section. In order to continue any other health insurance coverage during the leave, the employee shall contribute that portion of the premium the employee would have been required to contribute had they remained an active employee during the leave period.

The period of such leave shall count towards the one-year limit described in Article 7.10.

### 7.15    Return to System Employment

A person who terminates employment for reasons other than retirement and who returns to the employment of the System within one (1) year of the date of such resignation or termination shall be credited with the number of unused days of sick leave that were available to them on the last work day. Unused personal leave shall be reinstated to the employee if they return within the same calendar year. No credit will be given for vacation days.

### 7.16    Leave Privileges for Transferred Employees

Employees of the state who are transferred into or within the System shall carry with them all accrued sick, vacation, and personal leave previously earned elsewhere in the service of the state or the Board.

### 7.17    Separation Because of Incapacity

When a Management or Confidential staff member has become physically or mentally incapable of or unfit for the efficient performance of duties of his/her position, the President/Campus CEO may recommend to the Board of Regents that the person be separated from state service in good standing, after the staff member has exhausted the sick leave or other leave to which he/she is entitled. The Vice President for Human Resources may require that the management or confidential employee receive a physical or mental examination by a competent medical professional.

## ARTICLE 8 – NON-CONTINUATION, DISCIPLINE, REPRIMAND, SUSPENSION AND TERMINATION

### 8.1    Non-continuation

Presidents/Campus CEOs may be non-continued only by an action of the Board. Other management and confidential professional employees may be non-continued in their current positions without cause or explanation, at the option of the President of the Board, for System Office employees; or Presidents/Campus CEO, for College and University employees. Permanent employees hired on or after January 1, 2013, shall receive three (3) months' notice, except for employees hired as campus Presidents/Campus CEOs whose notice periods shall be established in their initial appointment letters. Campus academic management positions at or above the level of Dean may receive up to twelve (12) months' notice. Permanent employees hired prior to January 1, 2013, shall have the greater of three (3) months' notice or the notice provisions covered by the policy that was previously in effect for their respective employer (e.g. BOR/DHE, CCC, CSU or Charter Oak). The Board retains the authority to offer payment of salary in lieu of service or notice.

### 8.2    Discipline for Cause

No employee shall be disciplined except for cause. Discipline is defined as reprimand, suspension or termination. Discipline does not include counseling.

Cause includes, but is not limited to: conviction of a crime; offensive, indecent or abusive conduct toward students, the public, superiors or co-workers; use of fraudulent credentials in seeking of appointment, continuation of appointment or promotion; poor performance; theft; willful neglect or misuse of state funds, property, equipment, material or supplies, including state-owned vehicles; violation of law, state regulation or policy of the Board of Regents for Higher Education; intoxication while on duty; neglect of duty; insubordination; engagement in an activity detrimental to the State or the Board of Regents for Higher Education; and disloyalty to the United States or to the State of Connecticut.

### 8.3    Reprimand

All reprimands shall be placed in the employee's personnel file and a copy shall be sent to the employee. Written reprimands may be removed from an employee's personnel file on the one year anniversary of the date of its issuance unless, during that one year period there is additional discipline issued to the employee. It shall be the employee's responsibility to request removal of a reprimand after its expiration date has passed. Reprimands may only be removed by mutual agreement of the President/Campus CEO, Chief Human Resources Officer and the employee.

### 8.4    Suspension

A President/Campus CEO may suspend an employee with pay if the employee constitutes a threat of harm to him or herself or others pending investigation of conduct for which discipline may be appropriate.

A President/Campus CEO may suspend an employee without pay for cause as specified in section 8.2. In any given action, the affected employee shall have the right to know and respond to the reasons for suspension without pay prior to the imposition of the penalty.

**CSCU Human Resources Policies for M/C Professional Personnel**                    Page 27

---

8.5     **Appeals of Discipline (not applicable to those non-continued based on 8.1)**

To discipline an employee (per 8.2) the following steps shall be followed:

- A.     Before any disciplinary action is taken a meeting shall be arranged with the employee and the designee of the employer to discuss the situation. The employee shall have the opportunity to present relevant information. Upon the agreement of both parties discussion may be continued to a mutually agreed time.
- B.     After the employer has issued discipline the employee may request a formal hearing by presenting said request not later than five (5) days after the receipt of the disciplinary notice. Said hearing shall be scheduled within thirty (30) days following a timely request by the employee.
- C.     A hearing for non-Presidential/non-Campus CEO Staff shall be held before the Vice President for Human Resources or his/her designee. The hearing shall not be governed by formal rules or procedures. The Vice President for Human Resources or his/her designee shall make a good faith effort to be fair and impartial while eliciting relevant information on the matter in question. If the discipline that is being contested was imposed by the Vice President for Human Resources then the President of the Board of Regents may appoint a different hearing officer of his/her choosing.
- D.     Hearings for Presidential/Campus CEO Staff shall be held by a committee of three appointed by the Chairman of the Board of Regents or his/her designee. Such hearings shall not be governed by formal rules or procedures. The committee appointed by the Chairman of the Board or his/her designee shall make a good faith effort to be fair and impartial while eliciting relevant information on the matter in question.
- E.     In either a Presidential/Campus CEO or non-Presidential/non-Campus CEO hearing the hearings officers have ten
       (10) days from the conclusion of the hearing to notify the employee of his/her final and binding decision.  Said decision(s) shall be without appeal.
- F.     Failure by an employee to adhere to the deadlines specified herein shall be deemed a waiver of the opportunity for a hearing on the matter.

8.6     **Abandonment**

Failure to perform assigned duties for five (5) consecutive working days without prior approval of the CSCU President (for system office personnel); or the President/Campus CEO (for college and university personnel) is abandonment of one's appointment/position. The employee who has abandoned his/her position will then be separated from State service and be deemed to have resigned not in good standing.

8.7     **Layoff**

In the event of a reduction in the ranks of Management and/or Confidential Professional employees resulting from retrenchment, reorganization or fiscal exigency, the notice provisions for non-continuation in 8.1 shall apply.

8.8     **Notice of Retirement or Resignation *(08/21/14)***

is recommended that employees planning retirement provide three (3) months of notice and employees resigning provide at least four (4) weeks of notice when possible. Scheduling of the last day at work should be discussed with the employee's supervisor or other designated individual in an attempt to work out the best arrangement for all concerned.

# APPENDICES

**A.       MC Salary Range Plans effective 7/1/2020**

| CSCU FY21 MC Grid Annualized | | | | | |
|---|---|---|---|---|---|
| Salary Structure: July 1, 2020 | | | | | |
| Level/System Classification | Min | 1/4 Mark | Midpoint | 3/4 Mark | Maximum |
| Professional 1 | $44,890 | $53,106 | $56,112 | $61,723 | $67,334 |
| Professional 2 | $52,685 | $62,328 | $65,856 | $72,442 | $79,027 |
| Professional 3 | $62,003 | $73,352 | $77,504 | $85,254 | $93,005 |
| Manager 1 | $72,845 | $86,178 | $91,056 | $100,162 | $109,267 |
| Manager 2 | $85,478 | $101,124 | $106,848 | $117,533 | $128,218 |
| Manager 3 | $99,994 | $118,296 | $124,992 | $137,491 | $149,990 |
| Executive 1 | $118,003 | $139,602 | $147,504 | $162,254 | $177,005 |
| Executive 2 | $138,432 | $163,770 | $173,040 | $190,344 | $207,648 |
| Executive 3 | $162,893 | $192,708 | $203,616 | $223,978 | $244,339 |
| Executive 4 | $191,386 | $226,416 | $239,232 | $263,155 | $287,078 |
| Executive 5 | $224,986 | $266,166 | $281,232 | $309,355 | $337,478 |



# CLASSIFICATION AND COMPENSATION PROCEDURES

## Management and Confidential Professional Personnel

### Effective July 2020

# Table of Contents

INTRODUCTION ................................................................................................... 1

DEFINITIONS .................................................................................................. 2-3

JOB EVALUATION AND CLASSIFICATION ......................................................... 4

ESTABLISHMENT OF A NEW CLASSIFICATION/TITLE .......................................5

    Step 1:  Create or Update a Job Description ...............................................5

    Step 2:  M/C Evaluation Committee Reviews the Job ................................5

    Step 3:  Document Classification ................................................................5

SETTING THE HIRING SALARY ......................................................................... 6

    Step 1: Review Skills and Experience of the Individual ..............................6

    Step 2: Review Internal Equity ..................................................................7

    Step 3: Final Approval of Hiring Salary ......................................................7

CHANGES TO JOB CONTENT ........................................................................... 8

    Permanent Additional Duties ....................................................................8

    Reclassification of a Job .............................................................................8

    Step 1: Institution's HR Office Conducts Review ......................................9

    Step 2: M/C Evaluation Committee Reviews the Job ................................9

    Step 3: Document Reclassification ............................................................9

    Step 4: Consideration of Salary Adjustment .............................................9

    Re-Evaluation of a System Classification Title ........................................10

    Temporary Assignment of Additional Duties ..........................................11

    Interim Appointments .......................................................................11-12

PROMOTION ................................................................................................. 13

    Promotion to a Higher-Level Job .............................................................13

SALARY INCREASES AND ADJUSTMENTS ..................................................... 14

    Salary Increases .......................................................................................14

    Equity and Market Adjustments ..............................................................14

    Step 1: President's/Campus CEO's Written Justification..........................14

    Step 2: Review & Recommendation by M/C Evaluation Committee .........14

Step 3: CSCU President's Decision............................................................................................15

**APPENDIX A - SALARY STRUCTURE** ............................................................................. **16**

M/C Salary Rates, Annualized ..............................................................................................16

M/C Salary Rates, Biweekly ..................................................................................................16

President Salary Rates, Annualized........................................................................................17

President Salary Rates, Biweekly...........................................................................................17

**APPENDIX B - CLASS SPECIFICATIONS AND JOB DESCRIPTIONS** ........................................... **18**

Class Specifications ...............................................................................................................18

Job Descriptions ....................................................................................................................19

**APPENDIX C - JOB EVALUATION SYSTEM** ...................................................................... **20**

## Introduction

The Board of Regents (BOR) has adopted a Classification and Compensation System for the Connecticut State Colleges & Universities' (CSCU) Management and Confidential Professional employees and has authorized the CSCU President to make reasonable updates to the procedures from time to time within the conceptual basis of the system in order to keep the document current.  This system has been designed to provide competitive, fair, and equitable salaries in order to attract, retain, and engage highly-qualified staff.  To this end, the BOR will provide salary opportunities that:

- • Are based on job responsibilities;
- • Are competitive within the markets in which CSCU competes for talent;
- • Promote internal equity with jobs that have similar duties; and
- • Consider the financial resources of CSCU and each of its institutions.

This procedures manual is intended to be a reference for ongoing system-wide administration of compensation in a manner consistent with the system. The System Office Human Resources department is responsible for administering CSCU's Classification and Compensation Procedures for Management and Confidential Professional Personnel.

While we intend to lend stability in our policies and practices, the CSCU President reserves the right to interpret the policies, rules, sections, and provisions contained in this manual, as it deems appropriate in its sole discretion. The CSCU President also reserves the right to amend, modify, change, cancel, terminate, or withdraw any or all of the policies, rules, sections, and provisions of these guidelines at any time, unilaterally, with or without prior notice.

All hiring, reclassification, promotion and other personnel actions must comply with federal and state regulations, Board of Regents' policy, and the institution's policies and procedures including, but not limited to, Affirmative Action and Equal Opportunity requirements.  Nothing in these procedures should be construed to reduce, eliminate, or supersede any of those requirements.

The monetary impact of salary adjustments as a result of these procedures shall be absorbed by the institution at which the affected incumbent(s) is employed.

This manual, and all subsequent revisions, supersede and/or replace all policies, rules, and classification and compensation systems issued previously.

## Definitions

**CSCU President** – Refers to the President of the Connecticut State Colleges & Universities.

**Class Specification** - A Class Specification is a general overview of a particular occupational area (Administrative Assistant, CC Dean of Academic Affairs, SU Chief Human Resources Officer). A class specification contains a high-level synopsis of the most important features of a job, including a general description and the level of work performed.

**Department Head** – The manager who has oversight responsibility of the particular Management or Confidential Professional incumbent or position.

**HR Officer** – The highest ranking human resources position at the institution (e.g., Director or Associate Director of Human Resources at the colleges, Chief Human Resources Officer or Associate Vice President for Human Resources at the universities, Vice President for Human Resources at the System Office and Chief Financial and Administrative Officer at Charter Oak State College). In cases when the HR Officer is the subject of a possible personnel action, the President or designee, shall substitute for the HR Officer in the review and approval process.

**Institutions** – Refers to the colleges, universities and the System Office that comprise the CSCU System.

**Job Description** - A Job Description details characteristics, key responsibilities and duties of a specific job(s) at the incumbent level. A Job Description is job specific with well-defined statements that clearly identify and describe the scope and content of the job.

**Level** (or salary level) - Refers to one of the eleven salary levels from the lowest level of Professional 1 to the highest level of Executive 5 that comprise the CSCU salary structure for Management and Confidential Professional Personnel. Each salary level contains a set minimum, ¼ mark, mid-point, ¾ mark and maximum salary rate.

**M/C Job Evaluation Committee** – Standing committee of five comprised of the CSCU Vice President for Human Resources, and two college and two university Human Resources Officers. The Committee is appointed by the CSCU President, or designee. This Committee is responsible for evaluating new positions, jobs that have had a significant expansion of duties, and for reviewing equity and market salary adjustment requests. The committee will also be responsible for regular review and update to the salary ranges no more frequently than annually. The Committee will submit recommendations to the CSCU President for approval.

**Position/Job** – Position or job means a group of duties and responsibilities assigned or designated to require the services of one employee.

**President/Campus CEO** – Refers to campus leaders at any of the Connecticut State Colleges and Universities.

**System Classification Title** - A position or group of positions that share general characteristics and are categorized under a single System Classification Title for salary level and other administrative purposes. A system classification title is a generic title for a classification. If there is an abbreviation preceding the title, it indicates that the System Classification Title is limited to usage at certain institutions (e.g., BOR - System Office, CC - community colleges, COSC - Charter Oak State College, SU - state universities, or the specific initials of a particular institution such as 'CCSU').

## Job Evaluation and Classification

Based on a point factor system, the job evaluation process is used to provide CSCU with a consistent, replicable methodology that ensures appropriate classification of jobs and placement in the salary program. Each new job is evaluated by a M/C Job Evaluation Committee of five comprised of the CSCU Vice President for Human Resources and two college and two university HR Officers. The Committee shall be appointed by the CSCU President, or designee. The Committee may establish uniform procedures and forms, and set documentation standards for the job evaluation process.

The level placement is determined by the results of an analysis of the duties and responsibilities set forth in the job description using a point factor instrument (PFI), and comparison with similar jobs within the system. Appendix B contains further details concerning class specifications and job descriptions. See Appendix C for the seven factors that comprise the Job Evaluation System.

## Establishment of a New Classification/Title

Whenever possible, existing system classification titles should be used for new positions. However, when a HR Officer believes a new classification must be established the following procedure shall apply.

### Step 1: Create or Update a Job Description

Human Resources will assist the department head with gathering information about the job. The department head or his/her employee will need to complete or update a job description.

Upon receiving the draft job description, the institution's HR Officer will review the content and will finalize and approve the job description in consultation with the department head and/or the employee (if needed).

### Step 2:  M/C Evaluation Committee Reviews the Job

To initiate a job evaluation in order to create a new classification, the institution's HR Officer, with the approval of the President/Campus CEO, shall contact the CSCU Vice President for Human Resources. After the job description is approved at the institution, the position will be evaluated using a job evaluation tool (PFI) that directly corresponds to the factors listed in the Job Evaluation System as contained in Appendix C and comparing the position to similar jobs, if applicable.  The M/C Job Evaluation Committee may ask for additional information about the job, if necessary.  Jobs are classified and assigned to a level only after formal review and approval by the M/C Job Evaluation Committee.

### Step 3:  Document Classification

The HR Officer will be advised of the job evaluation results and will be provided with the salary level, system classification title and class specification document.

## Setting the Hiring Salary

The compensation plan consists of a series of eleven salary levels that are designed to provide competitive salary opportunities for the responsibilities and requirements of Management and Confidential Professional jobs within the CSCU System. The guidelines below provide direction on how salaries should be set within a level. Salaries should be determined and managed by taking into account the skills, education and experience of the individual, as well as external market and internal equity factors. Individuals within a job will progress through the level based on growth in their knowledge and experience, as well as performance.

The salary levels are wide enough to accommodate a variety of experience and performance levels, and all incumbents can expect to be paid within the salary range associated with their job's classification.

Setting a hiring salary involves a review by the HR Officer of the skills and experience of the incumbent in relation to the salary range associated with the job's level.

### Step 1: Review Skills and Experience of the Individual

Individual salaries will be collaboratively set within the range for the level by the HR Officer and the department head, or designee, based on the incumbent's individual skills and qualifications as defined below in *"Managing Salaries within a Level."* In all cases, hiring salaries are dependent upon the institution's available financial resources and internal equity considerations.

### Managing Salaries within a Level



| Minimum | ¼ Mark | Midpoint | ¾ Mark | Maximum |
|---|---|---|---|---|
| **1st Quartile** | **2nd Quartile** | **3rd Quartile** | **4th Quartile** |
| • New to job and field, has little or no direct, related prior experience<br>• On steep learning curve, building both skills and knowledge as well as ability to handle job responsibilities | • Will perform some/most job responsibilities effectively<br>• Possesses all/most of the base knowledge and skill requirements, but may need to build upon them through experience<br>• May still be learning some aspects of job or developing expertise to handle them more independently and effectively<br>• Exhibits many or most desired competencies to perform job successfully | • Will perform all aspects of job effectively and independently<br>• Experienced in the job and possesses required knowledge and skills<br>• Exhibits desired competencies to perform job successfully<br>• Seasoned and proficient at building job responsibilities | • Expert in all job criteria<br>• Has broad and deep knowledge of own area as well as related areas<br>• Depth and breadth of experience in the job, specialized skills and significant value<br>• Will serve as expert resource and/or role model/mentor to others in similar jobs or to other areas |

6

**Step 2: Review Internal Equity**

Before any salary is finalized, the institution's HR Officer will conduct a review of relevant salaries to ensure internal equity.  The HR officer will confirm the review of any significant equity issues with the Director of Compensation, Benefits, and HR Admin to ensure institution wide equity.

**Step 3: Final Approval of Hiring Salary**

For offers at or below the midpoint of the grade, the final hiring salary must be approved by the institution's HR Officer and President/Campus CEO, or designee, before an offer is made to a candidate.

Any salary offer above the midpoint of a grade must be submitted to the CSCU Vice President of Human Resources for approval along with:

- a justification for the offer
- support of the College or University President/Campus CEO
- support of the Human Resources Director

The CSCU Vice President of Human Resources will review and will engage the M/C Evaluation Committee for review of requests for salary offers above the midpoint of the grade of the respective rank for classifications. The Vice President of Human Resources will formulate a recommendation to the CSCU President. For Mgr3 classification and above, the President of CSCU has the authority to approve salary offers above the midpoint for classifications but below the third (3rd) quartile of the grade. For Mgr2 classification and below, the CSCU Vice President of Human Resources has the authority to approve salary offers above the midpoint but below the third (3rd) quartile of the grade. Any planned salary offers at or above the third (3rd) quartile of the grade require Board approval.

## Changes to Job Content

The content of a job may change in a variety of ways.  Any resulting changes to salary will be determined by the results of a comparison to similar jobs within the institution or CSCU system, a job evaluation (if necessary), and an internal equity analysis.

**NOTE:** A change to *how* work is done (e.g., changes to the tools or processes used to perform duties) *does not normally warrant a reclassification or a salary adjustmen*t. While such a change may require training to learn new software or methods, it does not usually change the purpose or overall accountabilities of the job.

### Permanent Additional Duties

A permanent expansion of responsibilities may not impact the job definition significantly enough to influence its market value or internal role.  Small changes in a job do not influence the job's core role at CSCU and its market value and, therefore, would not warrant reclassification (e.g., different software to handle same job responsibilities, procedural changes to existing work, responsibility for overseeing student workers).

 While such a change may not result in the job warranting a reclassification, the HR Officer may consider, upon review of the changes, whether or not a salary adjustment is warranted for the permanent additional duties assignment.  An element of the consideration will be the level of the position. Typically, the higher the level of the job, the more significant the added duties or responsibilities would need to be to warrant a salary adjustment, as the job may be sufficiently broad to encompass the expanded duties.

If the HR Officer determines an increase is warranted, the institution's HR Officer and department head will collaborate to determine the appropriate increase, with the final approval of the President, or designee, within the parameters set forth within these procedures.

### Reclassification of a Job

The following are examples of situations that *may* warrant a job reclassification:

- Department reorganization and job restructuring
- Addition of full-time staff reporting to the job
- Addition of new area(s) of responsibility
- Major change in level of authority, scope, impact and accountability

Requests for reclassification should be made by the department head to whom the position reports, and not by individual staff members. If a staff member believes that his/her job needs

to be reclassified, he/she should discuss this with his/her department head, who will review the request with the HR Officer to determine the appropriate course of action.

**Step 1: Institution's HR Office Conducts Review**

Human Resources will assist the department head with gathering information about the job changes. The department head or his/her employee will need to update a job description. Upon receiving the draft, updated job description, the institution's HR Officer will review the content and will finalize and approve the job description in consultation with the department head and /or the employee (if needed).

If in the judgment of the HR Officer, the content of an existing approved class specification closely meets the requirements of the reviewed job, that system classification title, class specification and salary level may be used if the following conditions are met: (1) The system classification title must be approved for use by the appropriate institution type (e.g., BOR, CC, COSC, SU); and (2) The incumbent employee must meet the minimum qualifications for the position. If using an existing system classification, go to Step 4, otherwise proceed to Step 2.

**Step 2: M/C Evaluation Committee Reviews the Job**

After the job description is approved at the institution, an HR Officer may initiate a reclassification review with the approval of the President, by contacting the CSCU Vice President for Human Resources. The position will be evaluated using a job evaluation tool (PFI) that directly corresponds to the factors listed in the Job Evaluation System as contained in Appendix C and comparing the position to similar jobs, if applicable. The M/C Job Evaluation Committee may ask for additional information about the job, if necessary. Jobs are reclassified and assigned to a new level only after formal review and approval by the M/C Job Evaluation Committee.

**Step 3: Document Reclassification**

The HR Officer will be advised of the job evaluation results and will be provided with the salary level, system classification title and class specification document.

**Step 4: Consideration of Salary Adjustment**

If after formal review, the M/C Evaluation Committee recommends a job be reclassified, the institution's HR Officer in collaboration with the department head will make a salary adjustment recommendation to the President or designee. The incumbent's salary may be increased by 6% to 10%, or to the minimum of the salary level of the new classification, whichever is greater. There may be instances in which a salary adjustment is not warranted

due to the incumbent's current salary level falling within the appropriate range of the new salary level.

| Change in Responsibilities | Impact on Salary | Example(s) but not limited to: |
|---|---|---|
| **Additional Duties**<br><br>**Permanent Expansion of Responsibilities Not Warranting a Reclassification** | • • Job remains assigned to its current level. Pay for additional duties assigned permanently should be calibrated to the magnitude of change.<br>• May or may not result in salary change. Can vary based on the assignment.<br>• If an increase is warranted, the incumbent's salary may be increased up to 5.9%. | Additional task added to the job function (e.g., performing a periodic analysis) |
| **Reclassification**<br><br>**Significant and Permanent Changes Warranting a Reclassification** | • Some changes or additions may impact the job definition significantly enough to influence its market value or internal role.<br>• These types of changes warrant a review to determine if a reclassification is appropriate.<br>• Salary change will vary based on the level into which the job is assigned and the incumbent's current salary.<br>• The incumbent's salary may be increased by 6% to 10%, or to the minimum of the salary level of the new classification, whichever is greater.  There may be instances in which a salary adjustment is not warranted due to the incumbent's current salary level. | Change in level of supervisory responsibility (e.g., team leader to supervisor) |

### Re-Evaluation of a System Classification Title

When the job content of an entire system classification title has changed substantially enough that it may have the effect of warranting a change in salary level, the entire system classification title may be re-evaluated by the M/C Job Evaluation Committee.  The CSCU Vice President for Human Resources, with the approval of the CSCU President, shall forward such a re-evaluation request to the M/C Evaluation Committee if he/she believes the re-evaluation is warranted.  If the review indicates the need for an increase in salary level for the system classification title, the salary adjustment parameters for a reclassification shall apply.  Individual salary adjustments related to the re-evaluation shall require approval of the CSCU Vice President for Human Resources who shall review to ensure system-wide equity within the system classification title.

**Temporary Assignment of Additional Duties**

When a staff member is temporarily assigned additional duties along with his/her regular job duties and the assignment is for a period of more than 30 days (excluding covering duties of other positions due to vacations and other short-term situations), the employee may receive additional pay of up to 10% beginning the 31st day of the assignment and retroactive to the first day of such temporary assignment.  Additional pay shall not be applicable when a staff member is required to cover the duties of a position at a comparable or lower level that exists within the scope of the staff member's department/division.  The additional pay shall be approved by the HR Officer and the President, or designee.

Temporary assignment of additional duties shall be reviewed after one year and normally shall not exceed two years in duration. Upon completion of the temporary assignment, the additional pay shall be removed.

**Interim Appointments**

It may be necessary for staff members at CSCU to be appointed on a temporary basis to cover a vacated Management or Confidential Professional position before a non-temporary appointment can be made.  If an employee accepts a temporary/interim appointment to a higher-level position, the incumbent shall be assigned to that position[1] and his/her salary may be increased by 6% to 10%, or to the minimum of the salary level of the new classification, whichever is greater.  The salary adjustment shall be approved by the HR Officer and the President/Campus CEO, or designee.  There may be instances in which a salary adjustment is not warranted due to the incumbent's current salary falling within the appropriate range of the salary level.

Those employees in a temporary/interim appointment may be considered for a salary increase if determined to be eligible by having an employment period of at least six months in a Management or Confidential Professional position as outlined below in Salary Increases and Adjustments.  An equivalent salary increase should be applied to their permanent Management or Confidential Professional position to which they are reassigned at the conclusion of their temporary/interim appointment.

When an employee serving in a temporary/interim appointment is appointed to that position on a non-temporary basis following a competitive search process, it shall be

---

[1] Typically, this would require placing the employee on leave in his/her non-temporary position and hiring them into the recently vacated position.

[2] The President/Campus CEO is responsible for documenting in the Affirmative Action Plan why a competitive search was not conducted to fill the vacancy (e.g., The hire resulted in the fulfillment of a promotional goal in the Affirmative Action Plan).

11

treated for salary purposes as a new hire.  This may or may not result in an additional salary adjustment depending on the incumbent's current salary in relation to his/her skills, education and internal equity considerations.  Reference the *"Setting the Hiring Salary"* section of these procedures.

If an employee serving in a temporary/interim appointment is appointed to that position on a non-temporary basis without a competitive search process[2], consideration of any salary adjustment for the employee will be pursuant to the guidelines provided for a promotion.

(Also see Article 5.7 of the Human Resources Policies for Management and Confidential Professional Personnel for policy related to interim appointments.)

## Promotion

### Promotion to a Higher-Level Job

Being promoted involves taking on a job that is assigned to a higher level. Such a move generally warrants an increase in salary to recognize these additional responsibilities and to ensure that the salary for the new job is consistent with market and internal equity. An exception may occur if the incumbent's current salary is very high in the level for his/her current job.

When a Management or Confidential Professional employee accepts a position following a competitive search process, it shall be treated for salary purposes as a new hire. Reference the *"Setting the Hiring Salary"* section of these procedures.

In the case of promotions that did not result from a competitive search process, the HR Officer, in consultation with the department head, will determine an appropriate salary within the new level, based on the staff member's skill, knowledge, experience, performance and current salary in relation to the new level.

The incumbent's salary may be increased by 6% to 10%, or to the minimum of the salary level of the new classification, whichever is greater. The President/Campus CEO, or designee, will provide final approval of the salary amount. In all cases, promotional increases are dependent upon available financial resources and internal equity considerations.

There may be instances in which a salary adjustment is not warranted due to the incumbent's current salary level. There also may be instances in which an increase of greater than 10% is appropriate and not simply to bring the incumbent to the minimum salary level. In these cases, the institution's President shall submit a written request to the Vice President of Human Resources detailing the reasons for the exception to the salary adjustment parameters. The Vice President of Human Resources will review and may consult with the M/C Evaluation Committee. The Vice President of Human Resources will formulate a recommendation to the CSCU President. A promotional adjustment of greater than 10% may only be implemented following the written approval of the CSCU President. Any increase of greater than 35% for any executive level employee (Manager 3 or above graded positions), other than those resulting from a grade change, will be submitted to the BOR HR/Admin Committee for approval.

## Salary Increases and Adjustments

### Salary Increases

Annual Salary increases may be approved by the CSCU President in accordance with market factors, negotiated union increases and the CSCU operating budget.

The effective date for annual salary increases shall be the beginning of the pay period that includes July 1. No one employed less than six months in a Management Confidential position covered by this policy shall be eligible for consideration of such a salary increase. Employees promoted from a Management Confidential role to a new Management Confidential role covered by this policy within the six months will be eligible for the increase. Anyone who will not be employed in a Management or Confidential Professional position as of September 1, for any reason, shall not be eligible for a salary increase. The System Office will disseminate guidelines for implementing annual salary adjustments/increases.

### Equity and Market Adjustments

- **Equity Adjustment:** an adjustment that is made to ensure that an individual staff member's salary appropriately reflects his/her skills, knowledge, experience, performance and longevity when compared to other incumbents within the same system classification title. Modest to moderate salary differences may be expected among incumbents within a classification due to a range of individual factors; however, when a significant salary difference is present that cannot be attributed to individual factors, an inequity may exist.

- **Market Adjustment:** an adjustment that is made to recognize changes in the competitive market salary for a job. Market adjustments are unlikely to occur often, because the compensation plan is based on benchmarking and is reviewed annually. Occasionally, however, unusual market circumstances may warrant an adjustment.

When a President/Campus CEO believes a pay inequity exists or a market adjustment is needed, the following procedure shall be followed:

### Step 1: President's/Campus CEO's Written Justification

The President/Campus CEO shall submit a written justification detailing the basis of the need for the recommended inequity/market adjustment, supporting documentation of such an inequity/market adjustment, and suggested salary (within current level) to the CSCU Vice President for Human Resources, or designee, who shall submit to the M/C Evaluation Committee for review.

14

**Step 2: Review & Recommendation by M/C Evaluation Committee**

Upon receipt of the justification, the M/C Evaluation Committee shall express their observations to the President/Campus CEO, or designee, concerning whether or not a pay inequity has been documented (or a market adjustment is warranted).  Committee member's comments should also address any matters regarding but not limited to system-wide impact and suggested salary.  If in the collective opinion of the M/C Evaluation Committee the job content of the position shares the general characteristics of positions in a higher classification, the matter will be referred to the reclassification process.

**Step 3: CSCU President's Decision**

The CSCU Vice President for Human Resources will forward the M/C Evaluation Committee's comments to the CSCU President who shall have final authority to grant or reject the inequity/market salary adjustment.  The CSCU President will communicate his/her decision to the campus President/Campus CEO.  Typically, the effective date of any related salary adjustment should not be earlier than the submission date of the original equity/market consideration request.

## Appendix A – Salary Structure (Effective July 1, 2020)

M/C Salary Rates (Annualized)

| CSCU FY21 MC Grid Annualized | | | | | |
|---|---|---|---|---|---|
| Salary Structure: July 1, 2020 | | | | | |
| Level/System Classification | Min | 1/4 Mark | Midpoint | 3/4 Mark | Maximum |
| Professional 1 | $44,890 | $53,106 | $56,??? | $61,??? | $67,334 |
| Professional 2 | $52,685 | $62,328 | $65,856 | $72,442 | $79,027 |
| Professional 3 | $62,003 | $73,352 | $77,50? | $85,25? | $93,005 |
| Manager 1 | $72,845 | $86,178 | $91,056 | $100,162 | $109,267 |
| Manager 2 | $85,??? | $101,124 | $106,8?? | $117,5?? | $128,218 |
| Manager 3 | $99,994 | $118,296 | $124,992 | $137,491 | $149,990 |
| Executive 1 | $118,003 | $139,602 | $147,504 | $162,254 | $177,005 |
| Executive 2 | $138,432 | $163,770 | $173,040 | $190,344 | $207,648 |
| Executive 3 | $162,893 | $192,?08 | $203,616 | $223,5?? | $244,339 |
| Executive 4 | $191,386 | $226,416 | $239,232 | $263,155 | $287,078 |
| Executive 5 | $224,986 | $266,166 | $281,232 | $309,?55 | $337,4?8 |

M/C Salary Rates (Biweekly)[2]

| CSCU FY21 MC Grid Bi-Weekly | | | | | |
|---|---|---|---|---|---|
| Salary Structure: July 1, 2020 | | | | | |
| Level/System Classification | Biweekly | 1/4 Mark | Midpoint | 3/4 Mark | Maximum |
| Professional 1 | $1,719.9? | $2,034.72 | $2,149.89 | $2,364.8? | $2,579.85 |
| Professional 2 | $2,018.59 | $2,388.05 | $2,523.22 | $2,775.56 | $3,027.86 |
| Professional 3 | $2,375.60 | $2,810.43 | $2,969.51 | $3,266.84 | $3,563.61 |
| Manager 1 | $2,791.00 | $3,301.84 | $3,488.74 | $3,837.63 | $4,186.48 |
| Manager 2 | $3,275.02 | $3,874.49 | $4,093.80 | $4,501.19 | $4,912.57 |
| Manager 3 | $3,831.19 | $4,532.42 | $4,788.97 | $5,267.86 | $5,746.75 |
| Executive 1 | $4,521.19 | $5,348.74 | $5,651.5? | $6,216.63 | $6,781.81 |
| Executive 2 | $5,303.91 | $6,274.72 | $6,629.89 | $7,292.88 | $7,955.87 |
| Executive 3 | $6,241.12 | $7,385.45 | $7,801.38 | $8,581.54 | $9,361.65 |
| Executive 4 | $7,332.80 | $8,674.95 | $9,165.98 | $10,082.57 | $10,999.16 |
| Executive 5 | $8,620.16 | $10,197.94 | $10,775.18 | $11,852.69 | $12,930.20 |

President Salary Rates (Annualized)

| CSCU FY21 Presidential Range Plans Effective 07/01/2020 * -Annualized | | | | | |
|---|---|---|---|---|---|
| **CAMPUSES** | **Minimum** | **1/4 Mark** | **Midpoint** | **3/4 Mark** | **Maximum** |
| **SMALL UNIVERSITIES** | | | | | |
| Eastern & Western | $269,650 | $285,992 | $302,008 | $332,209 | $362,410 |
| **LARGE UNIVERSITIES** | | | | | |
| Central & Southern | $294,700 | $312,561 | $330,064 | $363,070 | $396,077 |
| *The classification of Community College President is no longer used.  Anyone currently holding that classification is grandfathered in and will continue to receive adjustments equivalent to those awarded to all Management/Confidential employees | | | | | |

President Salary Rates (Biweekly)

| CSCU FY21 Presidential Range Plans Effective 07/01/2020 * Bi-weekly | | | | | |
|---|---|---|---|---|---|
| **CAMPUSES** | **Minimum** | **1/4 Mark** | **Midpoint** | **3/4 Mark** | **Maximum** |
| **SMALL UNIVERSITIES** | | | | | |
| Eastern & Western | $10,331.42 | $10,957.55 | $11,571.19 | $12,728.32 | $13,885.45 |
| **LARGE UNIVERSITIES** | | | | | |
| Central & Southern | $11,291.19 | $11,975.52 | $12,646.14 | $13,910.73 | $15,175.37 |
| *The classification of Community College President is no longer used.  Anyone currently holding that classification is grandfathered in and will continue  to receive adjustments equivalent to those awarded to all Management/Confidential employees | | | | | |

17

## Appendix B – Class Specifications and Job Descriptions

Class specifications and job descriptions are essential management tools and can be used for many purposes, including recruitment, organizational planning, salary benchmarking, FLSA classification, ADA (Americans with Disabilities Act) compliance, and conveying expectations for performance. Since jobs are assigned to levels based on their content, role, and responsibilities, it is important that class specifications and job descriptions be current, accurate, and complete.

**Class Specifications**

A new class specification must be created for any new system classification title.  The System Office Human Resources Department is responsible for creating and maintaining the class specifications, as necessary. The following sections comprise the class specification:

1. Job Summary/Essential Functions
2. Supervisory Responsibilities
3. Education & Experience
4. Physical/Environmental Demands
5. Job Evaluation Factors
   a. Role
   b. Independence & Decision Making
   c. Complexity & Problem Solving
   d. Scope of Measurable Effect
   e. Performance Horizon (length of time in position that is necessary to measure effectiveness of incumbent's job performance)



**CONNECTICUT STATE COLLEGES &**
**UNIVERSITIES MANAGEMENT CONFIDENTIAL**
**JOB DESCRIPTION**
CLASS SPECIFICATION

| Job Summary | |
|---|---|
| | |

| Essential Functions | | |
|---|---|---|
| The following duties reflect the primary responsibilities performed by employees in this job. Incumbent(s) may be required to perform additional, position-specific duties. | | |
| Responsibility | | Percent of Time |
| | | % |

## Job Descriptions

A job description must be created for any new position/title.  Additionally, a job description must be updated or created when the duties and responsibilities of a job change significantly in order to determine whether the job needs to be re-evaluated.  During the normal course of operations, changes in primary/essential responsibilities may make it necessary to rewrite or update the job description.  The institution's HR Officer, or designee, where the position is located is responsible for creating and maintaining the job descriptions, as necessary.

The following sections comprise the job descriptions (recommended length is not more than 2-3 pages):

- Job title, system title, classification, FLSA status, effective date;

- Job summary,

- Supervision exercised;

- Essential duties; and

- Qualifications (including education and experience, both required and preferred).

19

## Appendix C – Job Evaluation System

The job evaluation system used by CSCU analyzes and classifies jobs based on the following seven factors. Each factor has several defined levels of work and each job has distinct point totals that correspond with the job's level of work.

**Role**

- Role Type within the System
- Supervisory Responsibility

**Requirements**

- Education and Experience
- Complexity and Problem Solving

**Accountability**

- Independence and Decision Making
- Scope of Measurable Effect
- Performance Horizon (length of time in position that is necessary to measure effectiveness of incumbent's job performance)