# EXHIBIT 12

# MADSEN, PRESTLEY & PARENTEAU, LLC
*Representing Individuals in Employment Law and Related Litigation*

Attorneys At Law
Hartford • New London

**August 24, 2021**

402 Asylum Street
Hartford, Connecticut 06103
Telephone: (860) 246-2466
Facsimile: (860) 246-1794

**Via E-mail**

Matthew Larock, Esq.
Deputy Associate Attorney General
Office of the Attorney General
165 Capitol Avenue
Hartford, CT 06106

Re: **Dr. Nicole Esposito/CSCU**

Dear Matt,

On August 18, 2021, Andrew Kripp, Vice President of Human Resources for the CSCU System, provided Dr. Esposito with the Report submitted by Shipman & Goodwin ("Report") relating to that firm's investigation into Dr. Esposito's claims of discrimination and retaliation. Mr. Kripp further notified Dr. Esposito that the Board of Regents ("BoR") would be convened to consider the non-renewal of her appointment "as previously communicated" if she did not agree to the terms of CSCU's "final offer" requiring her to resign from her position and release and waive any claims by August 24, 2021.

We are writing in opposition to a further act of discrimination and retaliation committed this afternoon against Dr. Esposito, and to place CSCU and the BoR on notice that the Report suffers from serious and material deficiencies. CSCU should immediately rescind the most recent adverse action taken against Dr. Esposito, and CSCU and the BoR should refrain from taking adverse actions relating to Dr. Esposito.

CSCU has already taken actions that violate Dr. Esposito's rights. Earlier this month, Dr. Esposito filed a complaint against CSCU with the Commission on Human Rights and Opportunities alleging gender discrimination and retaliation in violation of the Connecticut Fair Employment Practices Act and Title VII of the Civil Rights Act of 1964.

This afternoon, shortly after Dr. Esposito informed Mr. Kripp that her attorneys would be sending a communication to you regarding this matter, Mr. Kripp informed Dr. Esposito that he was placing her on administrative leave effective immediately, that she was no longer acting in the capacity as the CEO of Manchester Community College, and that she was prohibited from

communicating with any member of the CSCU community, including employees, faculty, staff, and students. Mr. Kripp also directed Dr. Esposito to remove her belongings from campus.

If CSCU and the BoR take further action against Dr. Esposito, they will be committing further violations of Dr. Esposito's rights under state and federal law, and compounding their own liability and exposure.

Before CSCU and the BoR take any additional actions against Dr. Esposito, they must be made aware of the Report's significant deficiencies and why they should not rely on the Report's findings, some of which I have outlined here.

1. Although the investigation was described as "independent," Shipman & Goodwin was not an independent and unbiased investigator. Shipman & Goodwin represents and advises CSCU on labor/employment matters, including on union negotiations, and is therefore not an independent investigator. It is our understanding that Attorney Kevin Roy of Shipman & Goodwin, who works in the same office as the investigating attorney who issued the Report, is representing CSCU, and assisting Andy Kripp, in union negotiations. The fact that CSCU is a client of Shipman & Goodwin calls into question whether Shipman & Goodwin was truly independent and impartial in its investigation, including with respect to the findings that it made, and the facts and issues that it decided to avoid in its Report. Dr. Esposito only learned of this fact following the issuance of the Report. If Dr. Esposito had known this information prior to or during the investigation, she would have strongly objected to Shipman & Goodwin conducting the investigation.

2. There are glaring omissions in the Report, which, if included, would have further corroborated Dr. Esposito's claims of discrimination and retaliation.

3. One such omission lies at the heart of the entire case. The Report found that Dr. Steinmetz stated to Dr. Esposito in July 2020, that "you are only a week in and already acting like this. We will see if you work out here." (Report, pp. 6-7.) However, the Report completely ignored what precipitated Dr. Steinmetz making that statement to Dr. Esposito. As we recounted in our letter of June 23, 2021 to Attorney Weaver, and as Dr. Esposito detailed in her interview with the investigator, Dr. Steinmetz made that statement to Dr. Esposito immediately in response to Dr. Esposito challenging Dr. Steinmetz regarding sexist comments that he made about Dr. Esposito and another highly qualified woman. The fact that Dr. Steinmetz immediately threatened Dr. Esposito's employment when she objected to his sexist comments is direct evidence of retaliatory animus, and is directly relevant to the action by Dr. Steinmetz to follow through on that threat after the conclusion of the academic year in June 2021. The Report's failure to include those crucial details, and acknowledge the obvious import of those facts as evidence of retaliation by Dr. Steinmetz is a critical flaw that calls the entire Report into question. Additionally, the Report's failure to make findings regarding those sexist comments made by Dr. Steinmetz regarding Dr. Esposito and another highly qualified woman, as well as the other information provided by Dr. Esposito during her interview regarding continued

Matthew Larock, Esq.
August 24, 2021
Page 3 of 5

negative actions by Dr. Steinmetz against her, also undermines all of the conclusions in the Report regarding sex and gender discrimination.

4. Another glaring omission in the Report is its failure to provide an explanation from the decisionmakers regarding their decision to recommend that Dr. Esposito's contract be non-renewed. As the Report confirms, Dr. Steinmetz and Attorney Weaver never provided Dr. Esposito with any reason or explanation on June 17 for the decision. (Report, p. 11.) During Dr. Esposito's interview with the investigator, her attorney specifically requested that she receive an opportunity to respond to any explanation for the decision that CSCU offered during the investigation so that she could have an opportunity to demonstrate that the explanation offered was false and/or pretextual. Although the Report indicates that the investigator interviewed a number of individuals involved in the decision, including Dr. Steinmetz, Dr. Pritchard, and Attorney Weaver, the Report contains no information about what any of those individuals stated regarding CSCU's alleged reasons for recommending that Dr. Esposito's contract not be renewed. By not eliciting that information from the decisionmakers, and not including that information in the Report, the Report fails to make any assessment regarding whether the reasons offered by the decisionmakers were credible, or false, or consistent, or worthy of belief, and whether the reasons offered by the decisionmakers were a pretext for discrimination or retaliation. The Supreme Court has emphasized the importance of such an assessment in making findings regarding claims of discrimination and retaliation. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000). A report which purports to make findings regarding claims of discrimination and retaliation, yet is devoid of any information regarding the employer's asserted explanation for the decision, is simply not a credible report.

5. The Report identifies examples of Dr. Steinmetz threatening other CEO's in addition to Dr. Esposito, and construes those facts as evidence which fails to substantiate Dr. Esposito's claims of gender discrimination. (Report, p. 7.) Yet, the Report fails to acknowledge that those facts are evidence which support Dr. Esposito's claims of retaliation. The Report includes facts which confirm that Dr. Steinmetz has a pattern of retaliating against people who stand up to him, but fails to acknowledge the import of those facts. That is a glaring failure throughout the Report, which undermines the Report's findings relating to retaliation.

6. The Report's conclusion that Dr. Pritchard's response to Dr. Esposito's July 2020 complaint of discrimination was appropriate is simply not a credible finding. Upon receiving Dr. Esposito's July 2020 complaint, Dr. Pritchard essentially told Dr. Esposito to have lunch with Dr. Steinmetz. Dr. Pritchard did not conduct any investigation, or alert human resources. An employer has an obligation to take prompt actions in response to complaints of discrimination, and Dr. Pritchard's actions failed to comport with that obligation.

7. The Report contains information regarding what certain witnesses allegedly said during the investigation. However, based on the information shared by some of those witnesses, the Report does not accurately reflect what some of the witnesses stated to the investigator, and/or fails to include all of the relevant facts that we expect that those witnesses will offer. This also undermines the credibility of the investigation and Report.

Matthew Larock, Esq.
August 24, 2021
Page 4 of 5

8. The Report discounts other acts of discrimination and retaliation involving other CSCU employees because Dr. Steinmetz allegedly did not make the decision, and then fails to make findings regarding whether CSCU discriminated or retaliated against other individuals as alleged. (Report, p. 11.) The investigator was provided with information regarding Dr. Steinmetz's involvement. For instance, regarding the Financial Aid position at QVCC discussed in the Report, it is our understanding that Dr. Steinmetz participated in the call with Dr. Buckley to Dr. Ellis in which the directive was issued for Dr. Ellis to not hire, for a blatantly discriminatory reason, the superior female candidate that Dr. Ellis wanted to hire, and in which Dr. Ellis was directed to offer a pretextual justification for not hiring that female candidate, a failed search, which was not true. Dr. Steinmetz was a direct participant in that phone call and the Report should not have refused to make a finding regarding that issue. But that issue aside, Dr. Esposito's complaint is against CSCU, not just against Dr. Steinmetz. As the Report reveals, the CSCU system, including Dr. Gates, Dr. Pritchard, Human Resources, and Legal, were all involved in the decision to take action against Dr. Esposito. Therefore, the Report's failure to make findings regarding acts of alleged discrimination and/or retaliation in which the System Office, Human Resources, and/or Legal were involved because Dr. Steinmetz was purportedly not the decisionmaker was inappropriate. Additionally, the Report purports to make findings regarding alleged discrimination and retaliation involving other employees, but without interviewing those other employees.

9. During the course of the investigation, Dr. Esposito and her counsel provided significant additional information to the investigator regarding other evidence of discrimination and retaliation, including evidence against Dr. Steinmetz, that is not acknowledged or discussed in the Report. The Report's failure to address that information undermines the credibility of the Report and its findings.

10. The Report misleadingly claims that "Dr. Esposito and other CEOs could not explain why they thought Dr. Steinmetz would discriminate against Dr. Esposito on the basis of her gender/sex when he had just led the committee that hired her." (Report, p. 5.) In actuality, the investigator never asked Dr. Esposito to address that issue during her interview. If Dr. Esposito had been asked during her interview to address that issue, she could have provided a ready explanation. By claiming that Dr. Esposito could not explain something during her interview which the investigator never asked Dr. Esposito to explain, and then relying on that erroneous assertion to support the findings of the investigation, the Report exposes its bias and its lack of credibility.

11. The Report claims that the decision to recommend to the Board of Regents that Dr. Esposito's contract not be renewed was not made in isolation, but was a decision made with input from Dr. Steinmetz, Dr. Pritchard, Attorney Weaver, Dr. Gates, and Andrew Kripp, and that the parties updated Naomi Cohen of the Board. From that fact, the Report concluded that "this process, and the involvement of numerous women in this process, undermined Dr. Esposito's claim that the decision was discriminatory or retaliatory." (Report, p. 5.) There are several serious flaws with that analysis. First, the investigator did not interview Dr. Gates,

Andrew Kripp, or Naomi Cohen, despite identifying those people as being involved in the process or providing input into the decision. Second, the notion that the actions against Dr. Esposito could not have been discriminatory or retaliatory because women were allegedly involved is without any legal or factual basis. In fact, the Second Circuit Court of Appeals explicitly rejected that proposition. *Danzer v. Norden Sys.*, 151 F.3d 50, 55 (2d Cir. 1998)("The proposition that people in a protected category cannot discriminate against their fellow class members is patently untenable."). The Report similarly fails to provide any support for the proposition that retaliation could not have occurred because women had some involvement in the process. Women are also capable of retaliation. Third, Dr. Esposito had previously complained about discrimination directly to people identified as being involved in the decision, including Dr. Steinmetz and Dr. Pritchard, and therefore those individuals would have been in a position to retaliate against Dr. Esposito because of her complaint. Fourth, to the extent that some individuals involved in the process were motivated by discriminatory or retaliatory animus, their unlawful motivation can infect the decision and trigger liability even if other individuals were also involved in the decision, as the Supreme Court has recognized. *See, e.g., Staub v. Proctor Hosp.*, 562 U.S. 411, 419-422 (2011).

12. Although the Report indicates that Attorney Weaver recused herself from the investigation, there is evidence that Attorney Weaver had some involvement related to the investigation, including notifying witnesses that they would be interviewed by the investigator. In order to send communications to witnesses regarding their interviews, Attorney Weaver must have been informed in advance who the investigator intended to interview.

CSCU must immediately rescind the act of discrimination and retaliation taken against Dr. Esposito this afternoon.

Additionally, we are requesting that you promptly share this communication with President Cheng of CSCU and the members of the BoR so that CSCU and the BoR are aware of the deficiencies in the Report before they take any additional actions against Dr. Esposito in violation of her rights.

If you have any questions, or if you would like any additional information, regarding any of the issues identified in this communication, please contact me.

Thank you in advance for your prompt attention to this matter.

Very truly yours,

Todd Steigman

Cc: Erick Lohr, Associate Attorney General